MINNIE GONZALEZ ET AL. *v.* SHIRLEY
SURGEON ET AL.
(SC 17968)

Rogers, C. J., and Katz, Vertefeuille, Schaller and Sullivan, Js.

Argued September 19—officially released September 19, 2007*

*Steven A. Tomeo,* for the appellant (named plaintiff).

*John Rose, Jr.,* corporation counsel, with whom were *Jonathan H. Beamon,* assistant corporation counsel,

---

* September 19, 2007, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

and *Lori A. Mizerak*, assistant corporation counsel, for the appellees (defendants).

*Opinion*

ROGERS, C. J.[1] The plaintiffs, Minnie Gonzalez, Ramon Arroyo, Rosa Carmona, Maria Diaz, Carmen Rodriguez, Rachel Otero and Rigoberdo Nieva, brought this action against the defendants, Shirley Surgeon, the Democratic registrar of voters for the city of Hartford (city), and Daniel Carey, town clerk of the city of Hartford, pursuant to General Statutes § 9-329a (a).[2] The plaintiffs claimed, inter alia, that, pursuant to General Statutes § 9-410 (c),[3] Surgeon improperly had rejected certain petitions containing signatures by registered

---

[1] This appeal was argued on September 19, 2007, pursuant to an expedited briefing and argument schedule. Following oral argument, this court rendered its judgment on that date in the form of a truncated opinion, affirming the judgment of the trial court, and stating that a full opinion would follow in due course. *Gonzalez* v. *Surgeon*, 284 Conn. 141, 931 A.2d 833 (2007). Hence, we issue this full majority opinion.

[2] General Statutes § 9-329a (a) provides: "Any (1) elector or candidate aggrieved by a ruling of an election official in connection with any primary held pursuant to (A) section 9-423, 9-425 or 9-464, or (B) a special act, (2) elector or candidate who alleges that there has been a mistake in the count of the votes cast at such primary, or (3) candidate in such a primary who alleges that he is aggrieved by a violation of any provision of sections 9-355, 9-357 to 9-361, inclusive, 9-364, 9-364a or 9-365 in the casting of absentee ballots at such primary, may bring his complaint to any judge of the Superior Court for appropriate action. In any action brought pursuant to the provisions of this section, the complainant shall send a copy of the complaint by first-class mail, or deliver a copy of the complaint by hand, to the State Elections Enforcement Commission. If such complaint is made prior to such primary such judge shall proceed expeditiously to render judgment on the complaint and shall cause notice of the hearing to be given to the Secretary of the State and the State Elections Enforcement Commission. If such complaint is made subsequent to such primary it shall be brought, within fourteen days after such primary, to any judge of the Superior Court."

[3] General Statutes § 9-410 (c) provides: "Each circulator of a primary petition page shall be an enrolled party member of a municipality in this state who is entitled to vote. Each petition page shall contain a statement signed by the registrar of the municipality in which such circulator is an enrolled party member attesting that the circulator is an enrolled party member in such municipality. Unless such a statement by the registrar appears on each page so submitted, the registrar shall reject such page. No

Democratic voters that were required to secure Gonzalez' name on the ballot for the September 11, 2007 Democratic primary for the office of the mayor of the city. The trial court rendered judgment for the defendants on all counts of the plaintiffs' complaint. Pursuant to General Statutes § 9-325,[4] Gonzalez alone then filed an

candidate for the nomination of a party for a municipal office or the position of town committee member shall circulate any petition for another candidate or another group of candidates contained in one primary petition for the nomination of such party for the same office or position, and any petition page circulated in violation of this provision shall be rejected by the registrar. No person shall circulate petitions for more than the maximum number of candidates to be nominated by a party for the same office or position, and any petition page circulated in violation of this provision shall be rejected by the registrar. Each separate sheet of such petition shall contain a statement as to the authenticity of the signatures thereon and the number of such signatures, and shall be signed under the penalties of false statement by the person who circulated the same, setting forth such circulator's address and the town in which such circulator is an enrolled party member and attesting that each person whose name appears on such sheet signed the same in person in the presence of such circulator, that the circulator either knows each such signer or that the signer satisfactorily identified the signer to the circulator and that the spaces for candidates supported, offices or positions sought and the political party involved were filled in prior to the obtaining of the signatures. Each separate sheet of such petition shall also be acknowledged before an appropriate person as provided in section 1-29. Any sheet of a petition filed with the registrar which does not contain such a statement by the circulator as to the authenticity of the signatures thereon, or upon which the statement of the circulator is incomplete in any respect, or which does not contain the certification hereinbefore required by the registrar of the town in which the circulator is an enrolled party member, shall be rejected by the registrar. Any individual proposed as a candidate in any primary petition may serve as a circulator of the pages of such petition, provided such individual's service as circulator does not violate any provision of this section."

[4] General Statutes § 9-325 provides: "If, upon any such hearing by a judge of the Superior Court, any question of law is raised which any party to the complaint claims should be reviewed by the Supreme Court, such judge, instead of filing the certificate of his finding or decision with the Secretary of the State, shall transmit the same, including therein such questions of law, together with a proper finding of facts, to the Chief Justice of the Supreme Court, who shall thereupon call a special session of said court for the purpose of an immediate hearing upon the questions of law so certified. A copy of the finding and decision so certified by the judge of the Superior Court, together with the decision of the Supreme Court, on the questions

application for certification of questions of law and the trial court granted the application in part, certifying the following questions: (1) Whether § 9-410 (c) requires that all petitions obtained by a circulator when that circulator is seeking signatures for one mayoral candidate be invalidated when that same circulator later seeks signatures on a petition for a different candidate to the same office; (2) Whether the definition of "candidate" in § 9-410 (c) includes only bona fide candidates or also includes placeholder or straw candidates; and (3) Whether preponderance of the evidence is the appropriate standard of proof in determining the meaning of § 9-410 (c). Thereafter, pursuant to § 9-325, the certified questions of law were transmitted to the Chief Justice of the Connecticut Supreme Court, who called a special session of this court for the purpose of conducting a hearing upon the questions. We affirm the judgment of the trial court.

The record reveals the following undisputed facts and procedural history. On July 19, 2007, the Hartford Democratic town committee endorsed certain candidates for the offices of mayor of the city and members of the court of common council. The next day, Gonzalez, who had not been endorsed, filed an application for primary petition and a candidate consent form to obtain petitions for her to appear on the Democratic ballot for the primary that was to be held on September 11, 2007.

of law therein certified, shall be attested by the clerk of the Supreme Court, and by him transmitted to the Secretary of the State forthwith. The finding and decision of the judge of the Superior Court, together with the decision of the Supreme Court on the questions of law thus certified, shall be final and conclusive upon all questions relating to errors in the rulings of the election officials and to the correctness of such count and shall operate to correct the returns of the moderators or presiding officers so as to conform to such decision of said court. Nothing in this section shall be considered as prohibiting an appeal to the Supreme Court from a final judgment of the Superior Court. The judges of the Supreme Court may establish rules of procedure for the speedy and inexpensive hearing of such appeals within fifteen days of such judgment of a judge of the Superior Court."

On July 24, 2007, several individuals filed an application for primary petition and a candidate consent form to obtain petitions for them to appear as a challenge slate on the Democratic ballot for the primary. The challenge slate's consent form named Andrea Comer, Eric Crawford, Maria Diaz, David Morin, Paolo Mozzicato and Beatriz Roman as candidates for the court of common council and Jonathan Clark as a candidate for the office of mayor.

To qualify to appear on the ballot in the 2007 Democratic primary, the candidates were required to submit to Surgeon petitions containing the verified signatures of 5 percent of the enrolled Democratic electors in Hartford, which Surgeon had determined to be 1392 electors. The petition forms, which are included in a packet provided to municipal registrars of voters by the secretary of the state and which the circulators obtained from Surgeon, contained the following warning: "Circulator: Read separate Instruction Sheet before circulating." The instruction sheet provides in relevant part: "Circulator . . . No person may circulate petitions for more than the maximum number of candidates to be nominated by a party for the same office. . . . Any petition page circulated in violation of these provisions of the law must be rejected by the registrar." The deadline for filing the petitions to appear on the ballot for the September 11, 2007 primary was August 8, 2007.

Gonzalez and approximately eighteen volunteers, including the other plaintiffs in this action, circulated the petitions, collected signatures in support of Gonzalez' candidacy and submitted the petitions to Surgeon in batches from July 20 through August 2, 2007. After submitting what they believed to be sufficient signatures to qualify Gonzalez to appear on the ballot, several people who had circulated petitions for Gonzalez then circulated petitions on behalf of the challenge slate candidates, which included mayoral candidate Clark.

On the evening of August 1, 2007, Surgeon telephoned Gonzalez and informed her that she had obtained enough signatures to appear on the ballot.

Thereafter, Surgeon reviewed the petitions to verify that they complied with the requirement of § 9-410 (c) that "[n]o person shall circulate petitions for more than the maximum number of candidates to be nominated by a party for the same office or position . . . ." Upon discovering that several persons who had circulated and submitted petitions on behalf of Gonzalez also had circulated and submitted petitions on behalf of the challenge slate, which included Clark as a mayoral candidate, Surgeon determined that she was required to reject the petitions that had been submitted by these circulators. See General Statutes § 9-410 (c) ("any petition page circulated in violation of this provision shall be rejected by the registrar"). After consulting with the secretary of the state's office, Surgeon determined that any petitions that had been circulated and submitted on behalf of Gonzalez before the challenge slate had submitted its consent form on July 24, 2007, could be accepted, regardless of whether the circulator of the petitions subsequently had circulated petitions for the challenge slate. On August 8, 2007, the deadline date for filing the petitions, Surgeon informed Gonzalez that she had rejected some of the petitions submitted on Gonzalez' behalf. Several days later, Surgeon determined that neither Gonzalez nor the challenge slate had obtained enough signatures on valid petitions to qualify to appear on the primary ballot. On August 13, 2007, Surgeon provided to Carey the names of the candidates who were qualified to appear on the ballot. Carey was responsible for preparing the primary ballot and distributing absentee ballots twenty-one days before the primary, which was August 21, 2007. On August 14, 2007, Clark filed a formal withdrawal of his candidacy for mayor.

On August 20, 2007, the plaintiffs filed a four count complaint in the Superior Court alleging that Surgeon improperly had rejected the petition forms filed on behalf of Gonzalez because: (1) there was no violation of § 9-410 (c) with respect to the petitions that had been circulated on behalf of Gonzalez before any petitions had been circulated on behalf of the challenge slate (first count); (2) § 9-410 (c) applied only to bona fide candidates and Clark was not a bona fide candidate (second count); (3) § 9-410 (c) is unconstitutionally vague (third count); and (4) § 9-410 (c) unconstitutionally restricts political speech and associational rights under the first and fourteenth amendments to the federal constitution and article first, §§ 4, 5, 10 and 14 of the state constitution (fourth count). The plaintiffs sought declaratory and injunctive relief in the form of an order declaring that the petitions filed on her behalf were not invalid, that she was qualified as a Democratic candidate for the office of mayor, that her name should be placed on the ballot for the September 11, 2007 primary and that new absentee ballots be mailed or, in the alternative, that Carey be prohibited from mailing absentee ballots until final resolution of the plaintiffs' complaint. The plaintiffs also filed a motion for a temporary restraining order seeking an ex parte injunction prohibiting Carey from distributing the absentee ballots on August 21, 2007. The challenge slate candidates filed a separate action seeking similar relief.[5] Thereafter, the plaintiffs withdrew their request for an ex parte temporary injunction and the trial court denied the challenge slate candidates' request for a temporary restraining order. The trial court consolidated the two actions and ordered a hearing on the requests for a temporary injunction to commence on August 24, 2007. On August

---

[5] Surgeon rejected certain petitions filed on behalf of the challenge slate for the same reason that she had rejected the petitions filed on behalf of Gonzalez.

22, 2007, the plaintiffs filed a verified amended complaint making substantially the same allegations and seeking substantially the same relief as in the original complaint.

After trial commenced on August 24, 2007, the parties agreed that the trial court should convert the hearing on the claim for a temporary injunction to a full trial on the merits. At trial, the court heard evidence that the challenge slate had asked Clark to run for the office of mayor for the sole reason of securing an advantageous placement on the ballot, as provided by General Statutes § 9-437.[6] It also heard evidence that Clark always had intended to withdraw his candidacy if and when the challenge slate qualified to appear on the ballot.

On August 29, 2007, the trial court issued its decision in which it rendered judgment for the defendants on all counts of the plaintiffs' verified complaint. The court determined that, as to the first and second counts of the complaint alleging statutory violations, "[t]he usual civil standard of preponderance of the evidence is the appropriate burden of persuasion . . . ." (Internal quotation marks omitted.) With respect to the plaintiffs' claim that Surgeon should not have rejected the petitions that had been circulated on Gonzalez' behalf before the circulation of the petitions for the challenge slate under § 9-410 (c), the court concluded that the claim found no support in the plain language of the statute. The court also relied on the legislative history of the statute, which indicated that its purpose was "to eliminate some specific abuses that have been observed to have occurred during primaries from time to time.

___

[6] Under § 9-437 (a), the candidates endorsed by the Democratic town council would appear first on the ballot. Under § 9-437 (b), because the challenge slate submitted petitions for each office to be contested in the primary, their placement would follow the party endorsed candidates and precede single candidate positions.

By prohibiting circulation of petitions for rival candidates, the bill would prevent the somewhat unfair tactic of siphoning off votes of a strong rival to a weaker one, thereby increasing the circulator's relative strength." 21 H.R. Proc., Pt. 4, 1978 Sess., pp. 1455–56, remarks of Representative Elmer W. Lowden. The court concluded that accepting petitions submitted by a circulator who later circulated petitions for another candidate would undermine this legislative purpose.

The trial court also rejected the plaintiffs' claim that § 9-410 (c) referred only to bona fide candidates for office and did not apply to the circulation of a petition for a placeholder candidate. The court pointed out that the statute made no distinction between serious candidates and straw candidates. In addition, the court reasoned that it would place an unreasonable burden on registrars to determine the subjective intent of each candidate for office on a case-by-case basis. Finally, the court determined that to limit the application of § 9-410 (c) to the circulation of petitions for bona fide candidates for office would not advance the underlying purpose of the statute, which was to prevent candidates from engaging in tactics that had the effect of siphoning votes from a strong rival candidate to a weaker rival. The court also rejected the plaintiffs' constitutional claims. Accordingly, the trial court rendered judgment for the defendants on all counts of the plaintiffs' verified complaint.

Thereafter, Gonzalez filed an application for certification of questions of law pursuant to § 9-325. In the application, Gonzalez sought certification of eight questions relating both to her claims that Surgeon improperly had interpreted and applied § 9-410 (c) and that the statute was unconstitutional as applied. After a hearing on the application, the court denied Gonzalez' request to certify the constitutional questions and certified only the following three questions related to the

interpretation and application of § 9-410 (c):[7] (1) Whether § 9-410 (c) requires that all petitions obtained by a circulator when that circulator is seeking signatures for one mayoral candidate be invalidated when that same circulator at a later point in time seeks signatures on a petition for a different candidate to the same office; (2) Whether the definition of "candidate" in § 9-410 (c) includes only bona fide candidates or also includes placeholder or straw candidates; and (3) Whether preponderance of the evidence is the appropriate standard of proof in determining the meaning of § 9-410 (c).[8]

Thereafter, pursuant to § 9-325, the certified questions of law were transmitted to the Chief Justice of the Connecticut Supreme Court, who called a special session of this court for the purpose of conducting a hearing on the questions. We answer the certified questions as follows: (1) Yes; (2) "[C]andidate" as used in § 9-410 (c) includes a placeholder or straw candidate; and (3) We need not decide in the present case whether preponderance of the evidence is the appropriate standard of proof under § 9-410 (c) because there are no material facts in dispute.

---

[7] In rejecting Gonzalez' request to certify the constitutional questions, the trial court relied on this court's decisions in *Scheyd* v. *Bezrucik*, 205 Conn. 495, 503, 535 A.2d 793 (1987), and *Wrinn* v. *Dunleavy*, 186 Conn. 125, 134 n.10, 440 A.2d 261 (1982), in which we stated that a plaintiff may not use § 9-325 "to challenge a law or regulation under which the election or primary election is held by claiming aggrievement in the election official's obedience to the law. In such a case the plaintiff may well be aggrieved by the law or regulation, but he or she is not aggrieved by the election official's rulings which are in conformity with the law."

[8] Thereafter, Gonzalez brought a separate appeal from the judgment of the trial court to the Appellate Court in which she challenged the trial court's ruling that § 9-410 (c) is constitutional. We transferred that appeal to this court and heard oral argument in the appeal on the same date that we heard argument in the present appeal. We have rejected the claims raised in that appeal in a separate opinion. See *Gonzalez* v. *Surgeon*, 284 Conn. 573, 937 A.2d 24 (2007).

I

We first address Gonzalez' claim that the trial court improperly determined that § 9-410 (c) required Surgeon to reject the petitions in support of Gonzalez' candidacy that were circulated by persons who later circulated petitions on behalf of the challenge slate. Gonzalez contends that when her circulators "were circulating petitions on her behalf and had not circulated any petitions on behalf of the [c]hallenge [s]late, they were not in violation of the statute." She contends that, because it was only when the circulators began circulating petitions for the challenge slate that the statute was violated, Surgeon should have rejected only the petitions for the challenge slate.[9] We disagree.

As a preliminary matter, we set forth the standard of review. Gonzalez' claims involve the interpretation and application of § 9-410 (c). Our review is therefore plenary. See *Tracy* v. *Scherwitzky Gutter Co.*, 279 Conn. 265, 273, 901 A.2d 1176 (2006). "When interpreting a statute, '[o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature.' . . . To do so, we first consult 'the text of the statute itself and its relationship to other statutes. If, after

---

[9] The plaintiffs alleged in the verified complaint that "[t]hose petitions which were obtained for Gonzalez by a circulator before any petitions were gathered by [the] circulator for the [challenge slate] should not be invalidated, as there was no violation of . . . [§] 9-410 (c) at the time the petitions were collected for Gonzalez." The trial court stated in its memorandum of decision that "the plaintiffs allege that . . . Gonzalez' petitions were circulated *prior to* those of the [challenge] slate and those petitions, therefore, should not have been rejected because the circulators had not yet circulated any petitions for the [challenge] slate." (Emphasis in original.) Thus, the court appears to have assumed that *all* of the petitions for Gonzalez were circulated *before* any of the petitions for the challenge slate were circulated. The court did not make any factual finding on this matter. Because Gonzalez does not appear to claim that Surgeon improperly rejected the petitions, if any, that were circulated on her behalf after the circulators had circulated petitions for the challenge slate, we may assume for purposes of this opinion that no such petitions existed.

examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered.' General Statutes § 1-2z." (Citation omitted.) *Tracy* v. *Scherwitzky Gutter Co.*, supra, 273.

We begin our analysis with the language of the statute. Section 9-410 (c) provides in relevant part: "No person shall circulate petitions for more than the maximum number of candidates to be nominated by a party for the same office or position, and any petition page circulated in violation of this provision shall be rejected by the registrar." We conclude that the statute's reference to "any petition page *circulated in violation of this provision*" is ambiguous. (Emphasis added.) General Statutes § 9-410 (c). As Gonzalez points out, the petitions that were circulated on her behalf before any petitions were circulated for the challenge slate were not in violation of § 9-410 (c) *at the time that they were circulated.* The phrase could be interpreted either as referring only to the petition page or pages that were unlawful when they were circulated or as referring to any petition page relating to a particular office submitted to the registrar by a person who unlawfully had circulated petitions for more than the maximum number of candidates to be nominated for that office.

Because the language of § 9-410 (c) is ambiguous, we may consider its legislative history. The relevant portion of § 9-410 (c) was enacted in 1978 in response to certain events that had occurred during a municipal primary in New Britain. See Public Acts 1978, No. 78-125 (P.A. 78-125); Conn. Joint Standing Committee Hearings, Elections, 1978 Sess., p. 11, remarks of Claire Jacobs, vice chairman of the state elections commission. According to Jacobs, it was believed that a candidate in that primary had circulated petitions for another candidate for the same office in order to draw votes

from a third, stronger candidate. Conn. Joint Standing Committee Hearings, supra, pp. 11–13. Gloria Schaffer, then secretary of the state, testified in support of P.A. 78-125 that the legislation was "designed to eliminate some specific abuses that have occurred and by prohibiting the circulation of petitions for rival candidates, the bill would [prevent] . . . the somewhat unfair tactics of siphoning off the votes of a strong rival to a weaker one . . . ." Id., p. 4.

Thus, the legislature's focus in enacting P.A. 78-125 was on prohibiting the circulation *by any one person* of petitions for multiple candidates, on the presumption that the purpose and effect of such conduct is to siphon votes from the strongest rival candidate to one of the circulator's candidates. There is no temporal reference in the legislative history and, thus, there is no evidence that the legislature was concerned with the *timing* of such conduct. In addition, a registrar confronted with petitions circulated by the same person for multiple candidates is not required to ascertain which candidate was the intended "siphon" candidate and which candidate was the intended beneficiary of the tactic. Similarly, § 9-410 (c) contains no requirement that the registrar establish the subjective intent of a person who circulated petitions for multiple candidates before rejecting the petitions.[10] The legislature reasonably could not have intended, therefore, that the registrar would reject only the petitions in support of the "siphon" candidate. For the same reason, the legislature

---

[10] We are not persuaded by Gonzalez' contention that, because the plaintiffs had no fraudulent intent, her "interpretation of the statute . . . would satisfy both the concerns of the legislature concerning fraud but at the same time preserve the election field for bona fide candidates." Given the time constraints on elections and the inherent difficulty of establishing subjective intent, it simply would not be feasible to require a registrar to determine that a person who circulated petitions for multiple candidates intended to "siphon" votes away from the strongest rival candidate before rejecting the petitions filed by the person.

would have had no reason to provide that the registrar could accept some or all of the petitions for a particular candidate on the purely fortuitous ground that those petitions were circulated first.

Moreover, the legislature presumably was aware that, in reviewing the petitions to ensure that they comply with all applicable laws, the registrar must act under exceedingly narrow time constraints. We think it unlikely that the legislature intended that the registrar would be required under these circumstances not only to cross-check the names of the circulators for all of the candidates, but also to determine the dates that the petitions were circulated. With large numbers of persons circulating petitions at different times for different candidates, and occasionally simultaneously for multiple candidates, such a determination could be inordinately time consuming. In addition, if only the later set of petitions could be rejected by the registrar, candidates and circulators would have less incentive to refrain from circulating petitions for multiple candidates. They could gather sufficient signatures for the favored candidate to qualify to appear on the ballot and then circulate petitions for the "siphon" candidate knowing that the worst that could happen would be that the later petitions would be rejected. It is reasonable to conclude that the legislature intended that the registrar would reject *all* of the petitions circulated by any one person as a disincentive to engage in such conduct. Indeed, in construing a statute, we must be mindful as to whether the construction brings about a practical result. See *Schoonmaker* v. *Lawrence Brunoli, Inc.*, 265 Conn. 210, 229, 828 A.2d 64 (2003). Accordingly, we conclude that the legislative history supports the interpretation of § 9-410 (c) that, when a person has circulated petition pages for more than the maximum number of candidates to be nominated by a party for the same office or position, the registrar must reject

*any petition page circulated by that person,* regardless of when it was circulated.[11]

Gonzalez contends that this interpretation is contrary to the principle, indeed, the public policy, that election laws must be construed " 'to allow the greatest scope for public participation in the electoral process, to allow candidates to get on the ballot, to allow parties to put their candidates on the ballot, and most importantly to allow the voters a choice on Election Day.' *New Jersey Democratic Party, Inc.* v. *Samson,* [175 N.J. 178, 190, 814 A.2d 1028 (2002)]"; see also *Denny* v. *Pratt,* 105 Conn. 256, 260, 135 A. 40 (1926) ("electors should not be deprived of their votes, honestly cast for the candidate of their choice, as a result of doubtful judicial construction, a too strict regard for the letter of the statutes, or resort to nice or technical refinements of interpretation or application"). This principle, however, does not authorize the court to substitute its views for those of the legislature or to read into an election statute a limitation on its application that the legislature easily could have imposed but did not. As we have explained, we see no reason why the legislature would provide that the registrar could accept certain petitions filed by a person who had circulated petitions for multiple candidates merely because those petitions were circulated first. To the contrary, it had good reasons to provide otherwise. Accordingly, the principle that election laws must be liberally construed does not affect our conclusion.

---

[11] As we have indicated, in this case, Surgeon accepted all petitions that were circulated on behalf of Gonzalez before the challenge slate submitted its application for primary petition to Surgeon on July 24, 2007, regardless of whether the petitions were submitted by persons who subsequently circulated petitions for the challenge slate. In doing so, Surgeon followed the advice of the secretary of the state. That action has not been challenged and is not at issue in this appeal. In light of the foregoing analysis, however, we can see no reason to distinguish petitions filed on behalf of Gonzalez before the official creation of the challenge slate from petitions filed later for purposes of § 9-410 (c).

Gonzalez also argues that, under our interpretation of the statute, "[a] disgruntled circulator . . . could easily derail the candidacy of the first person for whom petitions had been circulated by filing a single petition for a separate candidate—thereby invalidating all petitions circulated at any time [before] that." The potential for such mischief exists, however, even under Gonzalez' interpretation of the statute. A person could circulate a petition for candidate A to a single elector, without candidate B's knowledge, and then circulate petitions for candidate B. The registrar would then be required to reject the petitions for candidate B. In any event, there is no claim in the present case that any of the circulators had any intent to derail Gonzalez' candidacy. Accordingly, we need not consider whether or how the statute would apply if such an intent were established.

## II

We next address Gonzalez' claim that the trial court improperly determined that § 9-410 (c) required Surgeon to reject petitions submitted by persons who had circulated petitions both for a bona fide candidate and for a placeholder candidate. Specifically, Gonzalez claims that, because Clark was merely a straw or placeholder candidate for mayor, § 9-410 (c) was not violated when circulators obtained signatures on petitions for both Gonzalez and Clark. We disagree.

Gonzalez' entire argument in support of this claim is set forth in two sentences in her brief, the gist of which is that "it seems clear that the use of the word 'candidate' throughout the election law contemplates only bona fide candidates and not mere placeholder candidates." As the defendants point out, however, nothing in § 9-410 (c) or the other statutes governing election procedures makes any distinction between bona fide candidates and placeholder candidates in a municipal primary. See General Statutes §§ 9-463 (2) and 9-601

(11) (defining " '[c]andidate' ").[12] There is no mechanism by which a candidate may be identified as a placeholder candidate on either the candidate consent form or the petition forms. Nor is there any other procedure by which the registrar may determine which candidates are bona fide and which candidates are not. Moreover, it is clear that any such procedure would be both inordinately burdensome on the registrar and inconsistent with the constricted time frames applicable to primary and election procedures.[13] Accordingly, we conclude that the trial court properly determined that the registrar must presume that all candidates who submit candidate consent forms are bona fide candidates and must treat all petitions filed on their behalf the same for the purposes of applying § 9-410 (c).

## III

Finally, we address Gonzalez' claim that the trial court improperly applied a preponderance of the evi-

---

[12] General Statutes § 9-463 (2), which is contained in chapter 154 of the General Statutes governing procedures for presidential primaries, provides: " 'Candidate' means any person whose name is placed, or proposed to be placed, as the case may be, on the primary ballot of a party . . . ."

General Statutes § 9-601 (11), which is contained in chapter 155 of the General Statutes governing campaign financing, provides: " 'Candidate' means an individual who seeks nomination for election or election to public office whether or not such individual is elected, and for the purposes of this chapter and sections 9-700 to 9-716, inclusive, an individual shall be deemed to seek nomination for election or election if such individual has (A) been endorsed by a party or become eligible for a position on the ballot at an election or primary, or (B) solicited or received contributions, made expenditures or given such individual's consent to any other person to solicit or receive contributions or make expenditures with the intent to bring about such individual's nomination for election or election to any such office. 'Candidate' also means a slate of candidates which is to appear on the ballot in a primary for the office of justice of the peace. For the purposes of sections 9-600 to 9-610, inclusive, and section 9-621, 'candidate' also means an individual who is a candidate in a primary for town committee members."

Gonzalez makes no claim that these definitions provide any support for her claim.

[13] Gonzalez' claim that there was no dispute in the present case that Clark had no intention of running for the office of mayor is therefore irrelevant.

dence standard. She contends that, "[w]hen a right as important as the right to vote for the candidate of one's choice is concerned, the state should have to demonstrate by more than a fair preponderance of the evidence that its limitations on the right are valid. Once a plaintiff makes out a prima facie case that the right to vote is being impinged upon, the burden should shift to the state to demonstrate by clear and convincing evidence that its restrictions are necessary and valid." Thus, Gonzalez claims that, contrary to our case law,[14] in claims brought pursuant to § 9-329a (a), the trial court must employ a burden shifting analysis similar to that applied in cases alleging the violation of antidiscrimination laws. See *Craine* v. *Trinity College*, 259 Conn. 625, 636–37, 791 A.2d 518 (2002). As we have indicated, however, there were no material facts in dispute in the proceedings before the trial court in the present case. Rather, the *sole* question before the court was whether Surgeon properly had interpreted and applied § 9-410 (c), which is a question of law subject to plenary review.[15] Accordingly, we need not resolve this issue in the present case.

The judgment is affirmed.

In this opinion the other justices concurred.

A candidate's "placeholder" status simply has no significance under § 9-410 (c).

[14] See *In re Election for Second Congressional District*, 231 Conn. 602, 629 n.25, 653 A.2d 79 (1994) ("the usual civil standard of a preponderance of the evidence is the appropriate burden of persuasion" in action brought under General Statutes § 9-323, governing contests and complaints in election of presidential electors, United States senator and United States representative); *Donovan* v. *Davis*, 85 Conn. 394, 400, 82 A. 1025 (1912) (under statute governing challenge to election results "petitioner must allege the facts on which his claim to have been elected is based, and he must prove those allegations by preponderance of evidence as in all other cases" [internal quotation marks omitted]).

[15] Of course, when choosing between two plausible interpretations of a statute, "one valid and one constitutionally precarious, we will search for an effective and constitutional construction that reasonably accords with the legislature's underlying intent." (Internal quotation marks omitted.) *State*

v. *Lutters*, 270 Conn. 198, 217, 853 A.2d 434 (2004). We have concluded, however, that Gonzalez' interpretation of § 9-410 (c) is not plausible. We also have concluded in the companion case of *Gonzalez* v. *Surgeon*, 284 Conn. 573, 937 A.2d 24 (2007), that the statute as interpreted in this case is not unconstitutional.