McDONALD, J.
**295 The question presented to us in this election case, brought under General Statutes § 9-329a, concerns the validity of petitions submitted to qualify a slate of candidates to run for election to the Democratic Town Committee for the sixth district of the city of Hartford. Specifically, it concerns whether election officials are required to reject such petitions if the circulator of the petitions knows or should know that the petitions contain an incorrect address for one of the candidates listed, irrespective of whether the candidate would be qualified to run for the position listed on the petitions under the correct address. We conclude that the threshold and, ultimately, dispositive issue is whether the acceptance of such a petition constitutes a "ruling of an election official," which is an essential predicate to *1205 a party's standing to proceed under § 9-329a. We conclude that it does not. Accordingly, the trial court lacked jurisdiction to consider the merits of this claim. **296 Before we turn to the particular facts of this case, it is helpful to set forth the legal landscape that informs the significance of those facts. In the city of Hartford, Democratic Town Committee members are elected on a district basis rather than at large. See General Statutes § 9-431 (b). A person is eligible to be a candidate for a political party's town committee if that person's name appears on the last completed enrollment list of the party in the district within which that person is to be nominated. General Statutes § 9-406. If not endorsed by the party, the candidate must file petitions with the municipality's registrar of voters containing the signatures of a specified percentage of electors, whose names also appear on the last completed enrollment list of that party in the district, in support of his or her candidacy. General Statutes §§ 9-406 and 9-410.
Any person requesting petition forms to commence this process must provide to the registrar the name, address, and office or position sought of the candidate for whom the petition is being obtained, as well as a statement signed by the candidate indicating his or her consent to be a candidate for that office or position (consent form). General Statutes § 9-409. In turn, the registrar types or prints on the petition form the name and address of each such candidate, the office sought, and the political party holding the primary. General Statutes § 9-409.
Various provisions prescribe the eligibility of persons signing the petitions, the contents of each petition page, and the eligibility of persons circulating the petitions to collect signatures (circulator). General Statutes §§ 9-409, 9-410, 9-411 and 9-431. On each petition page, the circulator must certify his or her eligibility and attest to the veracity of the information collected from the electors signing the petitions. General Statutes § 9-410 (c).
**297 When the petitions are returned, the registrar verifies that they conform to specified mandates. The registrar must reject any petition page that fails to contain the requisite certifications by the circulator or that was circulated in violation of the specified procedures. General Statutes § 9-410 (b) and (c). The registrar also must reject any signature of any person whose name does not appear on the last completed enrollment list in the district. General Statutes § 9-412. After certifying the number of signatures on each valid petition page that conforms to the requirements, the registrar files the certified pages with the clerk of the municipality, together with the registrar's certificate as to the whole number of names on the last completed enrollment list of such party in the district. General Statutes § 9-412.
The registrar notifies the municipal clerk if a primary is required, providing the candidates' names, addresses, and the titles of the office or position for which they are candidates. General Statutes § 9-435. The clerk, in turn, causes that notice to be published and to be filed with the Secretary of the State. General Statutes § 9-435.
With regard to the aforementioned procedures, the following facts in the present case were either found by the trial court or are otherwise undisputed. At all relevant times prior to March 6, 2018, the named defendant, Giselle Feliciano, was the Democratic registrar of voters for the city of Hartford, and the defendant John V. Bazzano was the clerk of the city of Hartford. A Democratic Town Committee primary was scheduled to take place on March 6, 2018, between two slates of candidates, the *1206 Arciniega slate[1] and the Peterson slate,[2] **298 after the defendants determined that each slate had timely submitted sufficient signatures to qualify to run for election. On February 9, 2018, the Arciniega slate commenced an action against the defendants under General Statutes §§ 9-329a (a) and 9-329b, seeking a writ of mandamus compelling the defendants to reject certain allegedly fraudulent elector signatures on the Peterson slate's petitions and to declare that the Peterson slate had obtained insufficient support to qualify as candidates. The Peterson slate thereafter sought and was granted permission to intervene in the action. See footnote 2 of this opinion.
Upon intervening, the Peterson slate filed a counterclaim against the defendants and the Arciniega slate under § 9-329a, seeking a declaration that the Arciniega slate was not qualified to run. The counterclaim alleged that one of the candidates on the Arciniega slate, Jacqueline Nadal, had falsely listed 646 New Britain Avenue as her residential address on her candidate consent form, which was an address where Nadal was registered to vote but had not resided for at least eight months. The counterclaim alleged that Nadal currently resided at 370 Freeman Street, and that this fact was known, or should have been known, to the circulators of the petitions containing the New Britain Avenue address. The counterclaim further alleged that the defendants were responsible for accepting and verifying the petitions and, as such, should have rejected the Arciniega slate's petitions.
On February 21, 2018, the trial court rendered judgment in favor of the Arciniega slate on both the Arciniega slate's complaint and the Peterson slate's **299 counterclaim. With regard to the complaint, the court directed the defendants to reject all elector signatures submitted in support of the Peterson slate that had been proven to be fraudulent, and to remove the Peterson slate from the ballot if there were insufficient valid signatures remaining to qualify the slate.
With regard to the counterclaim, the court concluded that the Peterson slate had not met its burden under § 9-329a to prove that there were "substantial violations of the requirements of the [election] statute ...." (Emphasis in original; internal quotation marks omitted.) Caruso v. Bridgeport , 285 Conn. 618, 649, 941 A.2d 266 (2008). The court found that there was insufficient evidence to prove that Nadal had abandoned her residence at New Britain Avenue, which Nadal still owned and where she still received mail, and, thus, that the petitions contained an incorrect address. The court further found that, even if that address was incorrect, the Peterson slate had not established that this error would have an impact on the ballots or the authenticity of the primary petitions because the New Britain Avenue and Freeman Street addresses were both *1207 within the sixth district. Finally, the court concluded that there was no authority for striking the slate on this basis, a result that would disenfranchise the voters who signed petitions supporting the Arciniega slate.
One member of the Peterson slate, Alyssa Peterson, filed an appeal from the trial court's judgment to the Appellate Court.[3] We transferred the appeal to this court and issued an order notifying the parties that the appeal would be considered on an expedited basis, and, as such, no reply briefs would be allowed. See General Statutes § 9-325 (providing that Supreme Court "may establish rules of procedure for the speedy and inexpensive hearing" of appeals and reservations stemming from contested elections and primaries).
In her appeal, Peterson challenges the trial court's judgment only insofar as the court rejected the counterclaim. She contends that the trial court applied an improper legal standard by requiring proof of abandonment or, alternatively, made a clearly erroneous finding that the Peterson slate had not met its burden of proving that Nadal had abandoned the New Britain Avenue residence. In response, the Arciniega slate defends the trial court's decision but also contends that the appeal should be dismissed on the ground that either the Peterson slate lacked standing to advance its counterclaim or that the counterclaim was rendered moot by the Arciniega slate's subsequent election by default. We conclude that the Peterson slate lacked standing to advance the counterclaim. Accordingly, the trial court lacked jurisdiction to consider its merits.
It is settled law that a "court lacks discretion to consider the merits of a case over which it is without jurisdiction ...." (Internal quotation marks omitted.) Reinke v. Sing , 328 Conn. 376, 382, 179 A.3d 769 (2018). Standing implicates the court's subject matter jurisdiction. West Farms Mall, LLC v. West Hartford , 279 Conn. 1, 11 n.6, 901 A.2d 649 (2006). As such, even if a challenge has not been raised to a party's standing, the court is obliged to consider it once it has come to the court's attention.[4] See *1208 Fairfield Merrittview Ltd. Partnership v. Norwalk , 320 Conn. 535, 548, 133 A.3d 140 (2016). An appellate court has jurisdiction to determine whether the trial court had jurisdiction in the first instance. See Bacon Construction Co. v. Dept. of Public Works , 294 Conn. 695, 707, 987 A.2d 348 (2010). The issue of whether a party had standing raises a question of law over which we exercise plenary review. See, e.g., State v. Gault , 304 Conn. 330, 339, 39 A.3d 1105 (2012) ; New Hartford v. Connecticut Resources Recovery Authority , 291 Conn. 511, 518, 970 A.2d 583 (2009).
Standing, and its aggrievement component, is "the legal right to set judicial machinery in motion." (Internal quotation marks omitted.) New Hartford v. Connecticut Resources Recovery Authority , supra, 291 Conn. at 518, 970 A.2d 583. However, "[s]tanding ... is not a technical rule intended to keep aggrieved parties out of court; nor is it a test of substantive rights. Rather it is a practical concept designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented .... Aggrievement does not demand certainty, only the possibility of an adverse effect on a legally protected interest." (Internal quotation marks omitted.) Mayer v. Historic District Commission , 325 Conn. 765, 772-73, 160 A.3d 333 (2017).
The Peterson slate counterclaim was brought under § 9-329a (a) (1), which authorizes a judicial action by "[a]ny ... elector or candidate aggrieved by a ruling of an election official ...." As such, the purported legally protected interest depends upon statutory aggrievement.[5] "Statutory aggrievement exists by legislative fiat, not by judicial analysis of the particular facts of the case. In other words, in cases of statutory aggrievement, particular legislation grants standing to those who claim injury to an interest protected by that legislation." (Internal quotation marks omitted.) Mayer v. Historic District Commission , 325 Conn. at 773, 160 A.3d 333.
The interest protected under § 9-329a depends upon a "ruling of an election official ...." This court has had several occasions to consider and elaborate upon the meaning of this phrase. A ruling of an election official "must involve some act or conduct by the official that (1) decides a question presented to the official, or (2) interprets some statute, regulation or other authoritative legal requirement, applicable to the election process. Bortner v. Woodbridge , [250 Conn. 241, 268, 736 A.2d 104 (1999) ]; see also Wrotnowski v. Bysiewicz , [289 Conn. 522, 526-27, 958 A.2d 709 (2008) ]." (Internal quotation marks omitted.) Price v. Independent Party of CT-State Central , 323 Conn. 529, 536, 147 A.3d 1032 (2016). This court's prior review of the text, genealogy, and legislative history of this statute has revealed that this test is not intended to have a *1209 "narrow, technical meaning." Caruso v. Bridgeport , supra, 285 Conn. at 646, 941 A.2d 266. Instead, "[t]his test is broad enough to include conduct that comes within the scope of a mandatory statute governing the election process, even if the election official has not issued a ruling in any formal sense. When an election statute mandates certain procedures, and the election official has failed to apply or to follow those procedures, such conduct implicitly constitutes an incorrect interpretation of the requirements of the statute and, therefore, is a ruling." (Internal quotation marks omitted.) Keeley v. Ayala , 328 Conn. 393, 403-404 n.10, 179 A.3d 1249 (2018). Conversely, "the court will not find a party aggrieved by a ruling when the ruling is made in conformity with the law." (Internal quotation marks omitted.) Price v. Independent Party of CT-State Central , supra, at 536, 147 A.3d 1032.
This court has effectively determined that an official may render a ruling, even if the official is unaware that a person has committed a violation of the election laws, if the official would be required to take dispositive action if that violation were known to the official. Such was the case in Wrinn v. Dunleavy , 186 Conn. 125, 440 A.2d 261 (1982). In that case, the plaintiff, the losing candidate in a Democratic party primary election for mayor, challenged the result of the primary under General Statutes (Rev. to 1981) § 9-329a. Id., at 126-27, 440 A.2d 261. He claimed that certain absentee ballots were void because they had been mailed by someone other than a person authorized by statute to do so and that he would have won the election if these improperly mailed ballots had not been counted. Id., at 129, 138-39, 440 A.2d 261. This court concluded that, "because the plaintiff would have won the primary had these ballots not been counted, he clearly is aggrieved by the ruling of an election official, such 'ruling' being the counting of the absentee ballots." Id., at 139, 440 A.2d 261. There was no indication that the election official who counted the ballots could have had knowledge of the claimed impropriety, and there was no procedure requiring the official to verify that the proper procedure had been followed. Nonetheless, the statute clearly provided that absentee ballots "shall be cast at any election only if " the specified mailing procedures had been followed. (Emphasis in original; internal quotation marks omitted.) Id., at 145-46, 440 A.2d 261, quoting General Statutes (Rev. to 1981) § 9-146 (a), now General Statutes § 9-140b. These procedures were imposed to prevent election fraud, a particular concern with regard to absentee ballots. See Keeley v. Ayala , supra, 328 Conn. at 407, 411, 179 A.3d 1249 ; In re Election for Second Congressional District , 231 Conn. 602, 652, 653 A.2d 79 (1994). This court later explained that, "by counting those invalid ballots, the election officials implicitly had interpreted the provisions of ... [the statute] regarding the casting and mailing of absentee ballots." Bortner v. Woodbridge , supra, 250 Conn. at 270, 736 A.2d 104. Effectively, this court imputed knowledge of the procedural impropriety, which rendered the ballots cast void, to the election official. Cf. Keeley v. Ayala , supra, at 393, 179 A.3d 1249 (considering merits of challenges to procedures relating to mailing and counting of absentee ballots that came to attention of neutral election monitor appointed by court or that were evidenced by lack of postmark).
The application of these principles to the Peterson slate's counterclaim and the applicable statutes yields the conclusion that the defendants' acceptance of the petitions bearing a purportedly incorrect address for Nadal did not constitute a "ruling of an election official." The Peterson slate never sought the defendants' advice as to whether *1210 Nadal could properly use the New Britain Avenue address or whether an incorrect address of a resident of the proper district required invalidation of the petitions. Therefore, the Peterson slate's claim would have to rest on a statute deeming the petitions void on this basis.
As we previously indicated, the candidate's address is provided to the registrar at the time the candidate's consent form is submitted by a person requesting petition forms for candidacy. See General Statutes § 9-409. The registrar is required to transfer that information onto a petition form. See General Statutes § 9-409 ("[u]pon receiving such information and statement, the registrar shall type or print on a petition form the name and address of each such candidate"). Although the scheme prescribes conditions under which the registrar must invalidate a petition or signatures thereon; see footnotes 6 and 7 of this opinion; § 9-409 imposes no similar conditions in relation to the candidate consent form. In fact, the Peterson slate made no claim that any statute rendered the consent form void due to the alleged defect or any claim that either defendant was required to verify or reject the Arciniega slate's consent form. See Gonzalez v. Surgeon , 284 Conn. 554, 571, 937 A.2d 13 (2007) (concluding with respect to candidate consent form that there is no "procedure by which the registrar may determine which candidates are bona fide," that "any such procedure would be both inordinately burdensome on the registrar and inconsistent with the constricted time frames applicable to primary and election procedures," and that "the registrar must presume that all candidates who submit candidate consent forms are bona fide candidates and must treat all petitions filed on their behalf the same for the purposes of applying § 9-410 [c]").
Instead, the Peterson slate counterclaim depends on its view that §§ 9-412 and 9-368c prescribe the contents of a petition and required the defendants to reject petitions bearing Nadal's incorrect address due to the circulator's improper act. Section 9-412 provides in relevant part: "The registrar shall reject any page of a petition which does not contain the certifications provided in section 9-410,[6] or which the *1211 registrar determines to have been circulated in violation of any other provision of section 9-410...."[7] Section 9-368c provides: *1212 "No person shall intentionally misrepresent the contents of a petition circulated under title 9.... Any person who violates any provision of this section shall be guilty of a class D felony."
We are not persuaded that the alleged conduct by the circulators violated either statute. Both statutes are aimed at the circulator's eligibility and conduct after he or she has received petition sheets to begin the signature collection process. See, e.g., Gonzalez v. Surgeon , supra, 284 Conn. at 570, 937 A.2d 13 (registrar properly rejected petitions circulated by person who circulated petitions for more than one candidate in violation of § 9-410 ). However, the statutory scheme plainly requires the petition form to bear the name and address of the candidate when the circulator receives the petition sheets. The circulator cannot be said to have made a misrepresentation regarding the contents of the petition by the mere act of circulating the preprinted form.[8] As such, neither §§ 9-412 nor 9-368c mandates that the registrar must invalidate a petition sheet circulated with a candidate's incorrect address.
Indeed, the only reference in the statutory scheme regarding the effect of an incorrect address on a petition suggests that a petition bearing such a defect would not be invalid per se. Section 9-412, which addresses the registrar's verification of elector signatures, provides in relevant part: "In checking signatures on primary petition pages, the registrar shall reject any name if such name does not appear on the last-completed enrollment list in the municipality or political subdivision, as the case may be .... The registrar shall not reject any name for which the street address on the petition is different from the street address on the enrollment list, if (1) such person is eligible to vote for the candidate or candidates named in the petition, and (2) the person's date of birth, as shown on the petition page, is the same as the date of birth on the person's registration record ...." (Emphasis added.) In other words, the registrar is not permitted to invalidate an elector's signature as long as there is evidence that the signatory is qualified to vote and is the person who signed the petition.
There is no dispute that Nadal was qualified to run for the town committee under either address. Had she not been qualified, § 9-329b provided a mechanism for the removal of her name from the ballot. Another statute places responsibility on the Secretary of the State to approve nominating petitions. See General Statutes § 9-379.
Finally, the only provision mandating any role for the clerk in reviewing the petitions also has no bearing on candidate addresses. General Statutes § 9-434 provides in relevant part: "Upon the filing with the clerk of a municipality ... of petitions for contesting candidates pursuant to section 9-412, such clerk shall verify and correct the names of any such candidate as the candidate authorizes the candidate's name to appear on the ballot, pursuant to ... the statement of consent filed in accordance with section 9-409... endorse the same as having been so verified and corrected and use the same in the preparation of the ballots for the primary ...."
In sum, there was no procedure mandated by law that either defendant failed to *1213 apply or follow, such that it could be said that either implicitly engaged in an incorrect interpretation of the statutory requirements. As such, the acceptance of petitions bearing a purportedly incorrect address for one candidate would not constitute a ruling of an election official. Therefore, Peterson lacks standing under § 9-329a.
Insofar as Peterson believes that the circulation of a petition bearing a candidate's incorrect address is a material defect that should render petitions bearing such a defect void, her recourse lies with other branches of the government. She can seek legislative action. See Gonzalez v. Surgeon , supra, 284 Conn. at 566, 937 A.2d 13 (noting that amendments to § 9-410 to require rejection of petitions circulated in violation of certain requirements were response to certain abuses that manifested during New Britain primary election). She can also pursue this matter administratively, either with the Commissioner of Elections, the Secretary of the State; see General Statutes § 9-3 ; or the State Elections Enforcement Commission. See General Statutes § 9-7b.[9]
The judgment is reversed with respect to the counterclaim and the case is remanded with direction to render judgment dismissing the counterclaim; the judgment is affirmed in all other respects.
In this opinion the other justices concurred.

The Arciniega slate was comprised of the following individuals, who were named as plaintiffs in the operative complaint and against whom the counterclaim was asserted: Milly Arciniega; Michael Brescia; Jacqueline Nadal; Lillie B. Parker; Alejandro Rodriguez; Maly Rosado; Anna Delia Sarraga-Cieri; Estela Morales Segarra; Pedro Torres, Jr.; Tyrone V. Walker; Carl A. Williams; Kathleen Kowalyshyn; and Hyacinth A. Yennie.

The Peterson slate was comprised of the following individuals: Alyssa Peterson; Damaris Bolorin; Rosa Camacho; Louis Delgado; Jane M. Grahn; Christobal Jiminian; Riberia Jones; Xaymara Santiago; Juan Tejada; James Teneyck; and Olga Velez. Peterson, Bolorin, Delgado, Jiminian, Jones, and Velez intervened as defendants in the action and asserted the counterclaim. For convenience, we also refer to the intervening defendants as the Peterson slate.

No other member of the Peterson slate appealed from the judgment. The defendants also declined to participate in this appeal.

Although the Arciniega slate challenges, for the first time on appeal, the standing of the Peterson slate to bring the counterclaim, the defendants had raised the claim before the trial court. The trial court acknowledged this argument, although apparently it did not recognize the argument as one implicating its jurisdiction because it rejected the counterclaim on other grounds on the merits. We are mindful that some of this court's cases appear to have treated this question similarly, treating the meaning of the phrase "ruling of an election official" in § 9-329a (a) (1) simply as a question of statutory interpretation divorced from the clearly jurisdictional phrase that precedes it-"aggrieved by." See, e.g., Caruso v. Bridgeport , supra, 285 Conn. at 633 n.13, 941 A.2d 266 ; see also Bortner v. Woodbridge , 250 Conn. 241, 267, 736 A.2d 104 (1999) (interpreting same phrase in different provision of statutory scheme governing election contest, General Statutes § 9-328 ). Other cases have adopted a holistic view of the statutory requirement, treating this question as jurisdictional. See, e.g., Wrotnowski v. Bysiewicz , 289 Conn. 522, 528-29, 958 A.2d 709 (2008) ; see also Price v. Independent Party of CT-State Central , 323 Conn. 529, 535-36, 147 A.3d 1032 (2016) (analyzing same phrase under General Statutes § 9-323 and noting that court's analysis of this phrase in §§ 9-328 and 9-329a is equally applicable to § 9-323 ); Scheyd v. Bezrucik , 205 Conn. 495, 502-507, 535 A.2d 793 (1987) (analyzing same phrase under § 9-323 ). We conclude that the latter is the proper view.
In resolving this issue, we are mindful that Peterson did not have an opportunity to file a reply brief to address the jurisdictional issue raised in the Arciniega slate's appellate brief because of the constraints necessary for expedited resolution of this appeal. Nonetheless, Peterson had the opportunity to address this issue at oral argument and summarily dismissed it as irrelevant.

"Two broad yet distinct categories of aggrievement exist, classical and statutory .... Classical aggrievement requires a two part showing. First, a party must demonstrate a specific, personal and legal interest in the subject matter of the decision, as opposed to a general interest that all members of the community share .... Second, the party must also show that the agency's decision has specially and injuriously affected that specific personal or legal interest." (Internal quotation marks omitted.) Mayer v. Historic District Commission , supra, 325 Conn. at 772, 160 A.3d 333. Classical aggrievement is not implicated under the facts of the present case.

General Statutes § 9-410 provides in relevant part: "(a) The petition form for candidacies for nomination to municipal office or for election as members of town committees shall be prescribed by the Secretary of the State and provided by the registrar of the municipality in which the candidacy is to be filed or duplicate petition pages shall be produced in accordance with section 9-409, and signatures shall be obtained only on such forms or such duplicate petition pages. Such form shall include, at the top of the form and in bold print, the following:
WARNING IT IS A CRIME TO SIGN THIS PETITION IN THE NAME OF ANOTHER PERSON WITHOUT LEGAL AUTHORITY TO DO SO AND YOU MAY NOT SIGN THIS PETITION IF YOU ARE NOT AN ELECTOR.
"The form shall include thereon a statement of instructions to persons using the form and shall indicate the date and time by which it shall be filed and the person with whom it shall be filed. The form shall provide spaces for the names and addresses of the candidates, the offices to which nomination is sought or the positions to which election is sought and the political party holding the primary, and shall provide lines for the signatures, street addresses, dates of birth and the printing of the names of enrolled party members supporting the person or persons on behalf of whose candidacy the petition is used ....
"(b) The names of enrolled party members signing a primary petition need not all be on one sheet but may be on several sheets, but no person shall sign more than one petition page for the same candidate or candidates. Any person who signs a name other than the person's own to a primary petition filed under the provisions of this section or who signs a name other than the person's own as circulator of such a petition shall be fined not more than one hundred dollars or imprisoned not more than one year or both. Each such sheet shall indicate the candidate or candidates supported, the offices or positions sought and the political party the nomination of which is sought or which is holding the primary for election of town committee members. No page of such a petition shall contain the names of enrolled party members residing in different municipalities and any page thereof which has been certified by the registrars of two or more municipalities shall be rejected by the registrar. Withdrawal of petition signatures shall not be permitted.
"(c) Each circulator of a primary petition page shall be an enrolled party member of a municipality in this state who is entitled to vote. Each petition page shall contain a statement signed by the registrar of the municipality in which such circulator is an enrolled party member attesting that the circulator is an enrolled party member in such municipality. Unless such a statement by the registrar appears on each page so submitted, the registrar shall reject such page. No candidate for the nomination of a party for a municipal office or the position of town committee member shall circulate any petition for another candidate or another group of candidates contained in one primary petition for the nomination of such party for the same office or position, and any petition page circulated in violation of this provision shall be rejected by the registrar. No person shall circulate petitions for more than the maximum number of candidates to be nominated by a party for the same office or position, and any petition page circulated in violation of this provision shall be rejected by the registrar. Each separate sheet of such petition shall contain a statement as to the authenticity of the signatures thereon and the number of such signatures, and shall be signed under the penalties of false statement by the person who circulated the same, setting forth such circulator's address and the town in which such circulator is an enrolled party member and attesting that each person whose name appears on such sheet signed the same in person in the presence of such circulator, that the circulator either knows each such signer or that the signer satisfactorily identified the signer to the circulator and that the spaces for candidates supported, offices or positions sought and the political party involved were filled in prior to the obtaining of the signatures. Each separate sheet of such petition shall also be acknowledged before an appropriate person as provided in section 1-29. Any sheet of a petition filed with the registrar which does not contain such a statement by the circulator as to the authenticity of the signatures thereon, or upon which the statement of the circulator is incomplete in any respect, or which does not contain the certification hereinbefore required by the registrar of the town in which the circulator is an enrolled party member, shall be rejected by the registrar. Any individual proposed as a candidate in any primary petition may serve as a circulator of the pages of such petition, provided such individual's service as circulator does not violate any provision of this section."

General Statutes § 9-412 provides in relevant part: "Upon the receipt of any page of a petition proposing a candidacy for a municipal office or for member of a town committee, the registrar shall forthwith sign and give to the person submitting the petition a receipt in duplicate, stating the number of pages filed and the date and time of filing and shall forthwith certify on each such page the number of signers on the page who were enrolled on the last-completed enrollment list of such party in the municipality or political subdivision, as the case may be, and shall forthwith file such certified page in person or by mail, as described in section 9-140b, with the clerk of the municipality, together with the registrar's certificate as to the whole number of names on the last-completed enrollment list of such party in such municipality or political subdivision, as the case may be, not later than seven days after receipt of the page .... In checking signatures on primary petition pages, the registrar shall reject any name if such name does not appear on the last-completed enrollment list in the municipality or political subdivision, as the case may be .... The registrar shall not reject any name for which the street address on the petition is different from the street address on the enrollment list, if (1) such person is eligible to vote for the candidate or candidates named in the petition, and (2) the person's date of birth, as shown on the petition page, is the same as the date of birth on the person's registration record. The registrar shall reject any page of a petition which does not contain the certifications provided in section 9-410, or which the registrar determines to have been circulated in violation of any other provision of section 9-410...."

The counterclaim alleged that several of the circulators knew or "should have known" that Nadal no longer lived at that address. If the circulators did not have actual knowledge of that fact, however, they could not have made an intentional misrepresentation in any event.

We note that the State Elections Enforcement Commission previously has adopted the position, in a decision cited by both parties to the trial court, that " 'where an individual truly maintains two residences to which the individual has legitimate, significant, and continuing attachments, that individual can choose either one of those residences to be their bona fide residence for the purposes of election law so long as they possess the requisite intent.' " State Elections Enforcement Commission, In re Peterson , File No. 2016-106 (July 19, 2017). We have no occasion to express a view on the commission's position in the present appeal.