## MINNIE GONZALEZ ET AL. *v.* SHIRLEY SURGEON ET AL.
## (SC 17969)

Rogers, C. J., and Katz, Vertefeuille, Schaller and Sullivan, Js.

Argued September 19—officially released September 19, 2007*

*Steven A. Tomeo*, for the appellant (named plaintiff).

*John Rose, Jr.*, corporation counsel, with whom were *Jonathan H. Beamon*, assistant corporation counsel, and *Lori A. Mizerak*, assistant corporation counsel, for the appellees (defendants).

*Opinion*

ROGERS, C. J.[1] The plaintiffs, Minnie Gonzalez, Ramon Arroyo, Rosa Carmona, Maria Diaz, Carmen Rodriguez, Rachel Otero and Rigoberdo Nieva, brought this action against the defendants, Shirley Surgeon, the

---

* September 19, 2007, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] This appeal was argued on September 19, 2007, pursuant to an expedited briefing and argument schedule. Following oral argument, this court rendered its judgment on that date in the form of a truncated opinion, affirming the judgment of the trial court, and stating that a full opinion would follow in due course. *Gonzalez* v. *Surgeon*, 284 Conn. 145, 931 A.2d 835 (2007). Hence, we issue this full majority opinion.

Democratic registrar of voters for the city of Hartford (city), and Daniel Carey, town clerk of the city, pursuant to General Statutes § 9-329a (a).[2] The plaintiffs claimed, inter alia, that Surgeon improperly had rejected pursuant to General Statutes § 9-410 (c),[3] certain petitions

[2] General Statutes § 9-329a (a) provides: "Any (1) elector or candidate aggrieved by a ruling of an election official in connection with any primary held pursuant to (A) section 9-423, 9-425 or 9-464, or (B) a special act, (2) elector or candidate who alleges that there has been a mistake in the count of the votes cast at such primary, or (3) candidate in such a primary who alleges that he is aggrieved by a violation of any provision of sections 9-355, 9-357 to 9-361, inclusive, 9-364, 9-364a or 9-365 in the casting of absentee ballots at such primary, may bring his complaint to any judge of the Superior Court for appropriate action. In any action brought pursuant to the provisions of this section, the complainant shall send a copy of the complaint by first-class mail, or deliver a copy of the complaint by hand, to the State Elections Enforcement Commission. If such complaint is made prior to such primary such judge shall proceed expeditiously to render judgment on the complaint and shall cause notice of the hearing to be given to the Secretary of the State and the State Elections Enforcement Commission. If such complaint is made subsequent to such primary it shall be brought, within fourteen days after such primary, to any judge of the Superior Court."

[3] General Statutes § 9-410 (c) provides: "Each circulator of a primary petition page shall be an enrolled party member of a municipality in this state who is entitled to vote. Each petition page shall contain a statement signed by the registrar of the municipality in which such circulator is an enrolled party member attesting that the circulator is an enrolled party member in such municipality. Unless such a statement by the registrar appears on each page so submitted, the registrar shall reject such page. No candidate for the nomination of a party for a municipal office or the position of town committee member shall circulate any petition for another candidate or another group of candidates contained in one primary petition for the nomination of such party for the same office or position, and any petition page circulated in violation of this provision shall be rejected by the registrar. No person shall circulate petitions for more than the maximum number of candidates to be nominated by a party for the same office or position, and any petition page circulated in violation of this provision shall be rejected by the registrar. Each separate sheet of such petition shall contain a statement as to the authenticity of the signatures thereon and the number of such signatures, and shall be signed under the penalties of false statement by the person who circulated the same, setting forth such circulator's address and the town in which such circulator is an enrolled party member and attesting that each person whose name appears on such sheet signed the same in person in the presence of such circulator, that the circulator either knows each such signer or that the signer satisfactorily identified the signer

containing signatures by registered Democratic voters that were required to secure Gonzalez' name on the ballot for the September 11, 2007 Democratic primary for the office of the mayor of the city. The trial court rendered judgment for the defendants on all counts of the plaintiffs' complaint. Gonzalez then filed this appeal,[4] claiming that the trial court improperly determined that (1) § 9-410 (c) is not void for vagueness under the due process clause of the fifth amendment to the United States constitution,[5] and (2) § 9-410 (c) does not constitute an unconstitutional restriction of free speech and associational rights under the first and fourteenth amendments to the United States constitution[6] and article first, §§ 4, 5, 10 and 14, of the constitution of Connecticut.[7]

to the circulator and that the spaces for candidates supported, offices or positions sought and the political party involved were filled in prior to the obtaining of the signatures. Each separate sheet of such petition shall also be acknowledged before an appropriate person as provided in section 1-29. Any sheet of a petition filed with the registrar which does not contain such a statement by the circulator as to the authenticity of the signatures thereon, or upon which the statement of the circulator is incomplete in any respect, or which does not contain the certification hereinbefore required by the registrar of the town in which the circulator is an enrolled party member, shall be rejected by the registrar. Any individual proposed as a candidate in any primary petition may serve as a circulator of the pages of such petition, provided such individual's service as circulator does not violate any provision of this section."

[4] Gonzalez appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[5] The fifth amendment to the United States constitution provides in relevant part: "No person shall . . . be deprived of life, liberty, or property, without due process of law . . . ."

[6] The first amendment to the United States constitution, made applicable to the states through the fourteenth amendment, provides in relevant part: "Congress shall make no law . . . abridging the freedom of speech . . . ."

[7] Article first, § 4, of the constitution of Connecticut provides: "Every citizen may freely speak, write and publish his sentiments on all subjects, being responsible for the abuse of that liberty."

Article first, § 5, of the constitution of Connecticut provides: "No law shall ever be passed to curtail or restrain the liberty of speech or of the press."

Article first, § 10, of the constitution of Connecticut provides: "All courts

As set forth in the companion case of *Gonzalez* v. *Surgeon*, 284 Conn. 554, 937 A.2d 13 (2007), the record reveals the following undisputed facts and procedural history. "On July 19, 2007, the Hartford Democratic town committee endorsed certain candidates for the offices of mayor of the city and members of the court of common council. The next day, Gonzalez, who had not been endorsed, filed an application for primary petition and a candidate consent form to obtain petitions for her to appear on the Democratic ballot for the primary that was to be held on September 11, 2007. On July 24, 2007, several individuals filed an application for primary petition and a candidate consent form to obtain petitions for them to appear as a challenge slate on the Democratic ballot for the primary. The challenge slate's consent form named Andrea Comer, Eric Crawford, Maria Diaz, David Morin, Paolo Mozzicato and Beatriz Roman as candidates for the court of common council and Jonathan Clark as a candidate for the office of mayor.

"To qualify to appear on the ballot in the 2007 Democratic primary, the candidates were required to submit to Surgeon petitions containing the verified signatures of 5 percent of the enrolled Democratic electors in Hartford, which Surgeon had determined to be 1392 electors. The petition forms, which are included in a packet provided to municipal registrars of voters by the secretary of the state and which the circulators obtained from Surgeon, contained the following warning: 'Circulator: Read separate Instruction Sheet before circulating.' The instruction sheet provides in relevant

shall be open, and every person, for an injury done to him in his person, property or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay."

Article first, § 14, of the constitution of Connecticut provides: "The citizens have a right, in a peaceable manner, to assemble for their common good, and to apply to those invested with the powers of government, for redress of grievances, or other proper purposes, by petition, address or remonstrance."

part: '<u>Circulator</u> . . . No person may circulate petitions for more than the maximum number of candidates to be nominated by a party for the same office. . . . Any petition page circulated in violation of these provisions of the law must be rejected by the registrar.' The deadline for filing the petitions to appear on the ballot for the September 11, 2007 primary was August 8, 2007.

"Gonzalez and approximately eighteen volunteers, including the other plaintiffs in this action, circulated the petitions, collected signatures in support of Gonzalez' candidacy and submitted the petitions to Surgeon in batches from July 20 through August 2, 2007. After submitting what they believed to be sufficient signatures to qualify Gonzalez to appear on the ballot, several people who had circulated petitions for Gonzalez then circulated petitions on behalf of the challenge slate candidates, which included mayoral candidate Clark. On the evening of August 1, 2007, Surgeon telephoned Gonzalez and informed her that she had obtained enough signatures to appear on the ballot.

"Thereafter, Surgeon reviewed the petitions to verify that they complied with the requirement of § 9-410 (c) that '[n]o person shall circulate petitions for more than the maximum number of candidates to be nominated by a party for the same office or position . . . .' Upon discovering that several persons who had circulated and submitted petitions on behalf of Gonzalez also had circulated and submitted petitions on behalf of the challenge slate, which included Clark as a mayoral candidate, Surgeon determined that she was required to reject the petitions that had been submitted by these circulators. See General Statutes § 9-410 (c) ('any petition page circulated in violation of this provision shall be rejected by the registrar'). After consulting with the secretary of the state's office, Surgeon determined that any petitions that had been circulated and submitted on behalf of Gonzalez before the challenge slate had

submitted its consent form on July 24, 2007, could be accepted, regardless of whether the circulator of the petitions subsequently had circulated petitions for the challenge slate. On August 8, 2007, the deadline date for filing the petitions, Surgeon informed Gonzalez that she had rejected some of the petitions submitted on Gonzalez' behalf. Several days later, Surgeon determined that neither Gonzalez nor the challenge slate had obtained enough signatures on valid petitions to qualify to appear on the primary ballot. On August 13, 2007, Surgeon provided to Carey the names of the candidates who were qualified to appear on the ballot. Carey was responsible for preparing the primary ballot and distributing absentee ballots twenty-one days before the primary, which was August 21, 2007. On August 14, 2007, Clark filed a formal withdrawal of his candidacy for mayor.

"On August 20, 2007, the plaintiffs filed a four count complaint in the Superior Court alleging that Surgeon improperly had rejected the petition forms filed on behalf of Gonzalez because: (1) there was no violation of § 9-410 (c) with respect to the petitions that had been circulated on behalf of Gonzalez before any petitions had been circulated on behalf of the challenge slate (first count); (2) § 9-410 (c) applied only to bona fide candidates and Clark was not a bona fide candidate (second count); (3) § 9-410 (c) is unconstitutionally vague (third count); and (4) § 9-410 (c) unconstitutionally restricts political speech and associational rights under the first and fourteenth amendments to the federal constitution and article first, §§ 4, 5, 10 and 14 of the state constitution (fourth count). The plaintiffs sought declaratory and injunctive relief in the form of an order declaring that the petitions filed on her behalf were not invalid, that she was qualified as a Democratic candidate for the office of mayor, that her name should be placed on the ballot for the September 11, 2007

primary and that new absentee ballots be mailed or, in the alternative, that Carey be prohibited from mailing absentee ballots until final resolution of the plaintiffs' complaint. The plaintiffs also filed a motion for a temporary restraining order seeking an ex parte injunction prohibiting Carey from distributing the absentee ballots on August 21, 2007. The challenge slate candidates filed a separate action seeking similar relief.[8] Thereafter, the plaintiffs withdrew their request for an ex parte temporary injunction and the trial court denied the challenge slate candidates' request for a temporary restraining order. The trial court consolidated the two actions and ordered a hearing on the requests for a temporary injunction to commence on August 24, 2007. On August 22, 2007, the plaintiffs filed a verified amended complaint making substantially the same allegations and seeking substantially the same relief as in the original complaint.

"After trial commenced on August 24, 2007, the parties agreed that the trial court should convert the hearing on the claim for a temporary injunction to a full trial on the merits. At trial, the court heard evidence that the challenge slate had asked Clark to run for the office of mayor for the sole reason of securing an advantageous placement on the ballot, as provided by General Statutes § 9-437.[9] It also heard evidence that Clark always had intended to withdraw his candidacy if and when the challenge slate qualified to appear on the ballot." *Gonzalez* v. *Surgeon*, supra, 284 Conn. 558–62.

---

[8] Surgeon rejected certain petitions filed on behalf of the challenge slate for the same reason that she had rejected the petitions filed on behalf of Gonzalez.

[9] Under § 9-437 (a), the candidates endorsed by the Democratic town council would appear first on the ballot. Under § 9-437 (b), because the challenge slate submitted petitions for each office to be contested in the primary, their placement would follow the party endorsed candidates and precede single candidate positions.

"On August 29, 2007, the trial court issued its decision in which it rendered judgment for the defendants on all counts of the plaintiffs' verified complaint. The court determined that, as to the first and second counts of the complaint alleging statutory violations, [t]he usual civil standard of preponderance of the evidence is the appropriate burden of persuasion . . . . With respect to the plaintiffs' claim that Surgeon should not have rejected the petitions that had been circulated on Gonzalez' behalf before the circulation of the petitions for the challenge slate under § 9-410 (c), the court concluded that the claim found no support in the plain language of the statute. The court also relied on the legislative history of the statute, which indicated that its purpose was to eliminate some specific abuses that have been observed to have occurred during primaries from time to time. By prohibiting circulation of petitions for rival candidates, the bill would prevent the somewhat unfair tactic of siphoning off votes of a strong rival to a weaker one, thereby increasing the circulator's relative strength. 21 H.R. Proc., Pt. 4, 1978 Sess., pp. 1455–56, remarks of Representative Elmer W. Lowden. The court concluded that accepting petitions submitted by a circulator who later circulated petitions for another candidate would undermine this legislative purpose.

"The trial court also rejected the plaintiffs' claim that § 9-410 (c) referred only to bona fide candidates for office and did not apply to the circulation of a petition for a placeholder candidate. The court pointed out that the statute made no distinction between serious candidates and straw candidates. In addition, the court reasoned that it would place an unreasonable burden on registrars to determine the subjective intent of each candidate for office on a case-by-case basis. Finally, the court determined that to limit the application of § 9-410 (c) to the circulation of petitions for bona fide candidates for office would not advance the underlying

purpose of the statute, which was to prevent candidates from engaging in tactics that had the effect of siphoning votes from a strong rival candidate to a weaker rival." (Internal quotation marks omitted.) *Gonzalez* v. *Surgeon*, supra, 284 Conn. 562–63.

With respect to the plaintiffs' claim that § 9-410 (c) was unconstitutionally vague because it did not clearly specify whether circulators were prohibited from circulating petitions for multiple candidates at separate times or whether it applied to petitions for placeholder candidates for the same office, the trial court concluded that the statutory language was clear as to both questions. With respect to the plaintiffs' free speech claims under the state and federal constitutions, the trial court first determined that, because the burden that § 9-410 (c) imposed on free speech rights was slight, the statute was not subject to strict scrutiny but required only a "logical justification." The court concluded that the state's interest in discouraging unfair election tactics was a sufficient justification and the statute was, therefore, constitutional. Accordingly, the trial court rendered judgment for the defendants on all counts of the plaintiffs' verified complaint.

Thereafter, Gonzalez filed this appeal, claiming that the trial court improperly had determined that § 9-410 (c) is not unconstitutionally vague and that the statute does not unconstitutionally restrict free speech rights.[10] We affirm the judgment of the trial court.

I

We first address Gonzalez' claim that the trial court improperly determined that § 9-410 (c) is not void for

[10] Gonzalez also brought a separate appeal pursuant to General Statutes § 9-325 challenging the trial court's determination that Surgeon properly had interpreted and applied § 9-410 (c) in rejecting the petitions filed on her behalf. She also raised these claims in the present appeal. We have rejected these claims in a separate opinion released on the same date as this opinion. See *Gonzalez* v. *Surgeon*, supra, 284 Conn. 554.

vagueness under the due process clause of the fifth amendment to the United States constitution. Specifically, Gonzalez claims that the statute is vague because it does not clearly delineate which petitions should be rejected when a person has circulated petitions for multiple candidates. Rather, she claims, the statute is ambiguous as to whether it required Surgeon to reject all of the petitions circulated by such persons or whether she was authorized to accept petitions that had been circulated for Gonzalez before any petitions had been circulated on behalf of the challenge slate by the same persons. She further claims that the statute is vague as to whether it refers only to bona fide candidates or also to "placeholder" candidates. Finally, she argues that, because § 9-410 (c) implicates first amendment rights; see part II of this opinion; we should apply a more stringent vagueness test than we apply to ordinary civil statutes.[11] We conclude that the statute is not unconstitutionally vague under any standard.

As a preliminary matter, we set forth the standard of review. "The purpose of the vagueness doctrine is twofold. The doctrine requires statutes to provide fair notice of the conduct to which they pertain and to establish minimum guidelines to govern law enforce-

[11] Gonzalez claims that the requirements that § 9-410 (c) imposes on registrars and on persons who circulate petitions are vague. Thus, the question arises whether Gonzalez, who is not a registrar and has not alleged that Surgeon rejected any petitions circulated by her, has standing to raise these vagueness claims. We note that the defendants make no claim that Gonzalez lacks standing to raise the claims and do not dispute that Surgeon's rejection of the petitions filed on Gonzalez' behalf directly affected her political speech rights. We conclude, therefore, that she has standing to raise these constitutional claims. See *Fort Trumbull Conservancy, LLC* v. *New London*, 282 Conn. 791, 803, 925 A.2d 292 (2007) (To establish standing, "a party must demonstrate a specific, personal and legal interest in the subject matter of the [controversy], as opposed to a general interest that all members of the community share. . . . Second, the party must also show that the [alleged conduct] has specially and injuriously affected that specific personal or legal interest." [Internal quotation marks omitted.]).

ment. The United States Supreme Court has set forth standards for evaluating vagueness. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. . . . [A] law forbidding or requiring conduct in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates due process of law. . . .

"Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory applications. . . . Therefore, a legislature [must] establish minimal guidelines to govern law enforcement. . . .

"Third, but related, where a vague statute abut[s] upon sensitive areas of basic [f]irst [a]mendment freedoms, it operates to inhibit the exercise of [those] freedoms. Uncertain meanings inevitably lead citizens to steer far wider of the unlawful zone . . . than if the boundaries of the forbidden areas were clearly marked. . . .

"These standards should not . . . be mechanically applied. The degree of vagueness that the [c]onstitution tolerates—as well as the relative importance of fair notice and fair enforcement—depends in part on the nature of the enactment. . . . The [c]ourt has . . . expressed greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe. And the [c]ourt has recognized that a scienter require-

ment may mitigate a law's vagueness, especially with respect to the adequacy of notice to the [party] that his conduct is proscribed. . . . [P]erhaps the most important factor affecting the clarity that the [c]onstitution demands of a law is whether it threatens to inhibit the exercise of constitutionally protected rights. If, for example, the law interferes with the right of free speech or of association, a more stringent vagueness test should apply." (Citations omitted; internal quotation marks omitted.) *State* v. *Indrisano*, 228 Conn. 795, 802–804, 640 A.2d 986 (1994).

With these principles in mind, we turn to the challenged language of § 9-410 (c). The statute provides in relevant part that "[n]o person shall circulate petitions for more than the maximum number of candidates to be nominated by a party for the same office or position, and any petition page circulated in violation of this provision shall be rejected by the registrar. . . ." General Statutes § 9-410 (c). With respect to Gonzalez' claim that the statute is vague as to whether it required Surgeon to reject all of the petitions circulated by such persons or whether she was authorized to accept petitions that had been circulated for Gonzalez before any petitions had been circulated on behalf of the challenge slate by the same persons, we have concluded in the companion case of *Gonzalez* v. *Surgeon,* supra, 284 Conn. 566, that "the statute's reference to 'any petition page circulated in violation of this provision' is ambiguous." We also have concluded, however, that the legislative history, as well as the practical application of the statute, compels the interpretation that the registrar was required to reject all petition pages filed by any person who had circulated petitions for more than the maximum number of candidates to be nominated for an office. Id., 568–69.

This court previously has held that when the meaning of a statute is clear from the statute's context, purpose

and legislative history, the fact that the language of the statute may be susceptible to more than one reasonable interpretation does not render it unconstitutionally vague. See *State* v. *Wilchinski*, 242 Conn. 211, 221, 700 A.2d 1 (1997) (rejecting vagueness challenge to General Statutes § 53a-217a in part because legislative history established clear meaning); see also *State* v. *Courchesne*, 262 Conn. 537, 555–56, 816 A.2d 562 (2003) (although language of death penalty statute supported defendant's interpretation, rule of lenity did not require court to adopt defendant's interpretation when context and legislative history of statute clearly supported contrary interpretation);[12] *State* v. *Lang*, 23 Conn. App. 272, 278, 580 A.2d 71 (1990) (rejecting vagueness challenge to General Statutes § 26-142a because legislative history established clear meaning). Because the meaning of the challenged portion of § 9-410 (c) is clear from the statute's purpose, practical application and legislative history, we conclude that the statute is not unconstitutionally vague, even under the more stringent vagueness test that we apply to statutes implicating first amendment rights.

Gonzalez also claims that § 9-410 (c) is unconstitutionally vague because it does not clearly define whether the word "candidate" refers only to bona fide candidates or also refers to placeholder candidates. We have concluded in the companion case of *Gonzalez* v. *Surgeon*, supra, 284 Conn. 570–71, that, because § 9-

[12] Our decision in *Courchesne* was legislatively overruled in part by General Statutes § 1-2z, which provides: "The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." Section 1-2z applies, however, only to statutory language that is clear and unambiguous. The statute did not overrule the principle that ambiguous statutory language is not unconstitutionally vague if the legislative history establishes a clear meaning.

410 (c) makes no distinction between bona fide candidates and placeholder candidates, it necessarily refers to *any* candidate. We adopt the reasoning of that case herein and, accordingly, we reject this claim.

## II

We next address Gonzalez' claim that § 9-410 (c) violates the first amendment to the United States constitution.[13] Specifically, Gonzalez contends that "[l]imiting circulators to only one political candidate in a particular [primary] election is a severe restriction of their [f]irst [a]mendment rights."[14] In addition, she contends that the statute does not effectively eliminate the type of conduct that the legislature intended to target, namely, maneuvers by one candidate intended to secure a place on the ballot for a nonserious candidate for the purpose of siphoning votes to that candidate from a third, stronger candidate. She further contends that the trial court improperly failed to apply strict scrutiny to the statute. We reject all of these claims.

We first consider whether the trial court applied the proper level of scrutiny. "The [United States] Supreme Court has identified two different, although overlapping, kinds of rights that the [f]irst [a]mendment grants: the right of individuals to associate for the advancement of political beliefs, and the right of qualified voters,

---

[13] Because Gonzalez has not separately briefed her free speech and associational rights claim under the state constitution, we confine our analysis to the federal constitutional claim. See *State* v. *Higgins*, 265 Conn. 35, 39 n.9, 826 A.2d 1126 (2003).

[14] The defendants make no claim that Gonzalez lacks standing to assert the rights of the circulators and case law establishes that restrictions on the speech rights of circulators also may implicate the speech rights of the persons on whose behalf the petitions are circulated. See, e.g., *Meyer* v. *Grant*, 486 U.S. 414, 421–22, 108 S. Ct. 1886, 100 L. Ed. 2d 425 (1988) (restrictions that reduce number of circulators limit ability of persons on whose behalf petitions are circulated to convey message). We conclude, therefore, that, under these circumstances, Gonzalez has standing to make this claim.

regardless of their political persuasion, to cast their votes effectively. Both of these rights, of course, rank among our most precious freedoms. *Anderson* v. *Celebrezze*, 460 U.S. 780, 787, 103 S. Ct. 1564, 75 L. Ed. 2d 547 (1983) (quoting *Williams* v. *Rhodes*, 393 U.S. 23, 30–31, 89 S. Ct. 5, 21 L. Ed. 2d 24 [1968]).

"While the role of voter is of the most fundamental significance under our constitutional structure, *Burdick* v. *Takushi*, 504 U.S. 428, 433, 112 S. Ct. 2059, 119 L. Ed. 2d 245 (1992) . . . the rights of voters and the rights of candidates do not lend themselves to neat separation; laws that affect candidates always have at least some theoretical, correlative effect on voters, *Anderson* [v. *Celebrezze*, supra, 460 U.S. 786] . . . . Accordingly, the [United States] Supreme Court has minimized the extent to which voting rights cases are distinguishable from ballot access cases. *Burdick* [v. *Takushi*, supra, 438]. In either context, [o]ur primary concern is with the tendency of ballot access restrictions to limit the field of candidates from which voters might choose. *Anderson* [v. *Celebrezze*, supra, 786] . . . .

"Yet not every regulation that limits the field of candidates is constitutionally suspect, let alone unconstitutional. As noted above, a state possesses significant power to structure its own elections. Moreover, as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes. Id. [788] . . . . Accordingly, in resolving a challenge that pits a [s]tate's power to regulate its elections against the rights secured by the [f]irst [a]mendment, we cannot resort to any litmus-paper test that will separate valid from invalid restrictions. Id. [789] . . . .

"Instead, we must first ascertain the character and magnitude of the asserted injury to the rights protected

by the [f]irst and [f]ourteenth [a]mendments that the plaintiff seeks to vindicate. Id. We must make that assessment not in isolation, but within the context of the state's overall scheme of election regulations. *Lerman* v. [*Board of Elections*], 232 F.3d 135, 145 (2d Cir. 2000). The [United States] Supreme Court has underscored that in assessing the extent to which a given set of candidate restrictions burdens [f]irst [a]mendment rights, our review is neither formalistic nor abstract. Instead, we must turn a keen eye on how the electoral scheme functions *in fact;* indeed, it is essential to examine in a realistic light the extent and nature of [the scheme's] impact on voters. *Bullock* v. *Carter*, 405 U.S. 134, 143, 92 S. Ct. 849, 31 L. Ed. 2d 92 (1972).

"If our realistic assessment yields the conclusion that the electoral scheme lightly or even moderately burdens [f]irst [a]mendment rights, we apply a relaxed standard of review, according to which the restrictions generally are valid so long as they further an important state interest. *Lerman* [v. *Board of Elections*, supra, 232 F.3d 145]. On the other hand, if we conclude that a law imposes severe burdens, we apply strict scrutiny, which requires that the law be necessary to serve a compelling state interest. Id.; see also *Bullock* [v. *Carter*, supra, 405 U.S. 147] ([b]ut under the standard of review we consider applicable to this case, there must be a showing of necessity . . . )." (Emphasis in original; internal quotation marks omitted.) *Lopez Torres* v. *New York State Board of Elections*, 462 F.3d 161, 183–84 (2d Cir. 2006), cert. granted, 549 U.S. 1204, 127 S. Ct. 1325, 167 L. Ed. 2d 72 (2007).

With these principles in mind, we address as a preliminary matter the question of whether § 9-410 (c) implicates protected first amendment rights of voters and candidates. The United States Supreme Court has recognized that the circulation of initiative petitions "involves the type of interactive communication con-

cerning political change that is appropriately described as 'core political speech.' " *Meyer* v. *Grant*, 486 U.S. 414, 421–22, 108 S. Ct. 1886, 100 L. Ed. 2d 425 (1988); see also *Buckley* v. *American Constitutional Law Foundation, Inc.*, 525 U.S. 182, 186, 119 S. Ct. 636, 142 L. Ed. 2d 599 (1999). In support of this conclusion, the court in *Meyer* reasoned that "[t]he circulation of an initiative petition of necessity involves both the expression of a desire for political change and a discussion of the merits of the proposed change. . . . This will in almost every case involve an explanation of the nature of the proposal and why its advocates support it." *Meyer* v. *Grant*, supra, 421. As at least one circuit court has recognized, this reasoning also applies to the circulation of petitions to appear on a primary ballot. See *Lerman* v. *Board of Elections*, supra, 232 F.3d 146 (citing *Meyer* in support of conclusion that circulation of petitions to appear on primary election ballot constitutes core political speech); see also *Citizens for John W. Moore Party* v. *Board of Election Commissioners*, 794 F.2d 1254, 1257 (7th Cir. 1986) ("laws controlling [ballot] access affect rights of both speech and association"). We conclude, therefore, that § 9-410 (c) implicates core political speech.

We next consider the "character and magnitude" of the burden that § 9-410 (c) imposes on political speech. (Internal quotation marks omitted.) *Lopez Torres* v. *New York State Board of Elections*, supra, 462 F.3d 184. Like the trial court in the present case, we find the decision of the United States Court of Appeals for the Seventh Circuit in *Citizens for John W. Moore Party*, to be particularly instructive on this question. In that case, the court considered the constitutionality of a provision of the Illinois Election Code that stated: "[N]o person shall circulate or certify petitions for candidates of more than one political party . . . to be voted upon at the next primary or general election." (Internal quota-

tion marks omitted.) *Citizens for John W. Moore Party* v. *Board of Election Commissioners*, supra, 794 F.2d 1255–56. One of the plaintiffs, John W. Moore, and several of his associates had circulated petitions to put Moore on the primary ballot as a Democratic candidate for the office of state senator. Id., 1255. Moore qualified, but he withdrew his candidacy before the election. Id. Moore and his associates then circulated petitions to put Moore on the general election ballot as the " 'Citizens for John W. Moore Party' " candidate for the state House of Representatives. Id. The defendant election commission rejected many signatures contained in the second set of petitions because they had been collected by circulators who previously had circulated petitions for Moore as a Democratic candidate. Id. Moore then brought an action in the United States District Court for the Northern District of Illinois claiming that the statutory provision was unconstitutional. Id., 1256. The District Court concluded that "the statute affects rights secured by the first and fourteenth amendments but found the effect small." Id. Accordingly, the court concluded that the provision did not impose "an unconstitutional burden." (Internal quotation marks omitted.) Id.

On appeal, the Court of Appeals stated that "[t]he [D]istrict [C]ourt found the burden [imposed by the election code provision] slight, and we concur. The statute applies only to circulators who switch parties during an election season. . . . [I]t does not diminish the pool of people available to circulate petitions . . . . It does not increase the number of signatures anyone needs to get on the ballot or the number of circulator-hours necessary to appear . . . . The statute does not affect the ability of 'used' circulators to speak. They may campaign for anyone to their hearts' content; Moore's friends could have done everything for him in his second race except collect signatures. [The election code provision] does undercut the *value* of the circulators' speech

to Moore and his friends, and what undercuts the value of speech implicates the first amendment. . . . But this was true, as well, in cases such as *Heffron* [v. *International Society for Krishna Consciousness, Inc.*, 452 U.S. 640, 101 S. Ct. 2559, 69 L. Ed. 2d 298 (1981)] and [*Clark* v. *Community for Creative Non-Violence*, 468 U.S. 288, 104 S. Ct. 3065, 82 L. Ed. 2d 221 (1984)], in which the [United States Supreme] Court allowed regulation by neutral values." (Citation omitted; emphasis in original.) *Citizens for John W. Moore Party* v. *Board of Election Commissioners*, supra, 794 F.2d 1260. Accordingly, the Court of Appeals concluded that the statute was constitutional as applied to circulators who had filed petitions on behalf of others. Id., 1263–64.

In the present case, the challenged portion of § 9-410 (c) prohibiting any person from circulating petitions for more than "the maximum number of candidates to be nominated by a party for the same office or position" affects only persons who have circulated petitions for the maximum number of candidates for one office and want to switch their support to another candidate or candidates for the same office and those who support one candidate or slate of candidates but want to circulate petitions for additional candidates for tactical reasons. As in *Citizens for John W. Moore Party*, the provision does not prevent such persons from supporting whatever candidate they choose in any manner they choose *except* by circulating petitions, it does not significantly diminish the pool of people available to circulate petitions for a particular candidate and it does not increase the number of signatures that must be collected on behalf of a particular candidate. We conclude, therefore, that the burden imposed by § 9-410 (c) is slight.

The cases in which courts have determined that restrictions on the circulation of ballot access petitions imposed a severe burden are distinguishable. In *Meyer*,

the court considered the constitutionality of a Colorado law that made it a felony to pay persons to circulate petitions to place a proposed state constitutional amendment on the general election ballot. *Meyer* v. *Grant*, supra, 486 U.S. 415–16. The court found that the law "restricts political expression in two ways: First, it limits the number of voices who will convey [the proponents'] message and the hours they can speak and, therefore, limits the size of the audience they can reach. Second, it makes it less likely that [the proponents] will garner the number of signatures necessary to place the matter on the ballot, thus limiting their ability to make the matter the focus of statewide discussion." Id., 422–23. Accordingly, the court concluded that the law was subject to "exacting scrutiny." Id., 420. In *Buckley*, the court considered, inter alia, the constitutionality of a Colorado law that required persons who circulated initiative petitions to be registered voters. *Buckley* v. *American Constitutional Law Foundation, Inc.*, supra, 525 U.S. 192–93. The court found that the provisions decrease "the pool of potential circulators as certainly as that pool is decreased by the prohibition of payment to circulators"; id., 194; thereby reducing the size of the audience that the circulators could reach and limiting their ability to secure placement of the initiative on the ballot. Id., 195. Accordingly, the court concluded that the law was not "warranted by the state interests (administrative efficiency, fraud detection, informing voters) alleged to justify" the law, without stating explicitly whether those state interests were required to be compelling. Id., 192; see also *Lerman* v. *Board of Elections*, supra, 232 F.3d 146 (New York law requiring that witnesses to ballot access petitions be residents of political subdivision in which office is to be voted for "severely burdens political speech by 'drastically reduc[ing] the number of persons . . . available to circulate petitions' "); *Campbell* v. *Bysiewicz*, 242 F.

Sup. 2d 164, 170 (D. Conn. 2003) (residency requirement for witnesses to petition signatures in § 9-410 [c] "drastically reduce[d] the persons available to circulate petitions" and was unconstitutional). In all of these cases, the controlling consideration was that the law under review significantly reduced the pool of potential circulators. The provision of § 9-410 (c) at issue in the present case does not eliminate any persons from the pool of eligible circulators. The statute merely requires any person who wants to participate in the petition process to choose one candidate or slate of candidates for whom he or she will circulate petitions. Thus, § 9-410 (c) restricts the pool of available circulators only in the sense that it requires candidates to compete for them. Accordingly, we conclude that these cases are not controlling.[15]

Because the provision of § 9-410 (c) prohibiting any person from circulating petitions "for more than the maximum number of candidates to be nominated by a party for the same office or position" imposes only a slight burden on core political speech, we conclude that the provision is not subject to strict scrutiny. Rather, "we apply a relaxed standard of review, according to which the restrictions generally are valid so long as they further an important state interest." *Lopez Torres* v. *New York State Board of Elections*, supra, 462 F.3d 184; see also *Anderson* v. *Celebrezze*, supra, 460 U.S. 788 ("the [s]tate's important regulatory interests are generally sufficient to justify reasonable, nondiscriminatory restrictions").

---

[15] Although Gonzalez does not contend that § 9-410 (c) reduces the pool of eligible circulators, she appears to claim that, because severely limiting the number of circulators available to a candidate is constitutionally questionable, severely limiting the number of candidates for whom a person may circulate petitions also must be constitutionally questionable. For the reasons we explain more fully in the body of this opinion, we are not persuaded.

In the companion case of *Gonzalez* v. *Surgeon*, supra, 284 Conn. 566–67, we stated that "[t]he relevant portion of § 9-410 (c) was enacted in 1978 in response to certain events that had occurred during a municipal primary in New Britain. See Public Acts 1978, No. 78-125 (P.A. 78-125); Conn. Joint Standing Committee Hearings, Elections, 1978 Sess., p. 11, remarks of Claire Jacobs, vice chairman of the state elections commission. According to Jacobs, it was believed that a candidate in that primary had circulated petitions for another candidate for the same office in order to draw votes from a third, stronger candidate. Conn. Joint Standing Committee Hearings, supra, pp. 11–13. Gloria Schaffer, then secretary of the state, testified in support of P.A. 78-125 that the legislation was designed to eliminate some specific abuses that have occurred and by prohibiting the circulation of petitions for rival candidates, the bill would [prevent] . . . the somewhat unfair tactics of siphoning off the votes of a strong rival to a weaker one . . . . Id., p. 4." (Internal quotation marks omitted.)

The United States Supreme Court has held with respect to restrictions on ballot access for candidates in a general election that "a [s]tate has a legitimate interest in regulating the number of candidates on the ballot. . . . In so doing, the [s]tate understandably and properly seeks to prevent the clogging of its election machinery [and to] avoid voter confusion . . . . Moreover, a [s]tate has an interest, if not a duty, to protect the integrity of its political processes from frivolous or fraudulent candidacies." (Citations omitted; internal quotation marks omitted.) *Storer* v. *Brown*, supra, 415 U.S. 732–33; see also *Citizens of John W. Moore Party* v. *Board of Election Commissioners*, supra, 794 F.2d 1260 ("there is . . . a potential for confusion if a circulator identified as the agent of one party suddenly solicits signatures for another party or an independent

candidate"); *Citizens of John W. Moore Party* v. *Board of Election Commissioners*, supra, 1261 (state has interest in preventing "maneuvers that could affect the quality of the candidates who will be on the ballot"). The United States Supreme Court also has held that the state has an interest in restricting "independent candidacies prompted by short-range political goals, pique, or personal quarrel" and in imposing a "barrier to a [political] party fielding an 'independent' candidate to capture and bleed off votes . . . that might well go to another party." *Storer* v. *Brown*, supra, 735.

We conclude that this reasoning applies equally to restrictions on ballot access for candidates in primary elections. The purpose of the relevant provision of § 9-410 (c) is to prevent the creation of frivolous candidacies intended solely to siphon votes from another candidate of the same party for the benefit of a favored candidate. If a political party's capacity to field an independent candidate in a general election for the purpose of siphoning votes from another party's candidate constitutionally may be restricted, then, a fortiori, an individual's capacity to qualify as a candidate in a primary election for the purpose of siphoning votes from another candidate of the same party constitutionally may be restricted. The legislature reasonably could have concluded that such conduct tends to be motivated by pique or personal interests rather than the genuine interests of the party or public, clogs the election machinery, creates voter confusion and unreasonably interferes with the party's long-term political goals. Moreover, the legislature reasonably could have believed that requiring candidates to compete for circulators would increase the quality of the candidates and invigorate the electoral process. Accordingly, we conclude that § 9-410 (c) furthers important state interests.

Gonzalez claims, however, that § 9-410 (c) is ineffective in achieving its purpose because "[c]andidates

could simply enlist additional circulators to help a weaker candidate circulate petitions and therefore avoid violating the statute." We disagree. The legislature reasonably could have believed that, even though the provision would not restrict the pool of eligible circulators, it would make it significantly more difficult for a siphon candidate to recruit circulators and to qualify to appear on the ballot. In any event, a statute that imposes only a slight burden on free speech may be less than perfectly effective without transgressing constitutional limits. *Citizens of John W. Moore Party* v. *Board of Election Commissioners*, supra, 794 F.2d 1262. We conclude, therefore, that the provision of § 9-410 (c) that "[n]o person shall circulate petitions for more than the maximum number of candidates to be nominated by a party for the same office or position" does not violate the right to free speech or association under the first amendment.

The judgment is affirmed.

In this opinion the other justices concurred.