******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

# PHYLLIS AIREY ET AL. *v.* GISELLE FELICIANO ET AL.
## (SC 21117)

McDonald, D'Auria, Ecker, Dannehy and Bright, Js.

*Syllabus*

Pursuant to statute (§ 9-329a (b) (3)), when a candidate who claims to be aggrieved by a ruling of an election official in connection with a primary election files a complaint in the Superior Court, the court must hold a hearing, and, "if [the court] finds any error in the ruling of the election official," it may "order a new primary if [it] finds that but for the error . . . the result of [the] primary might have been different and [it] is unable to determine the result of such primary."

The intervening defendants, a slate of candidates seeking to appear on the ballot for a primary election for the Democratic Town Committee for the seventh voting district of the city of Hartford, appealed from the decision of the trial court, which denied their motion for a new primary election on the ground that the court lacked authority to order a new primary. Previously, certain Hartford election officials had certified the intervening defendants' slate for the primary, as well as a competing slate consisting of the plaintiffs. A prior court determined that the intervening defendants were not qualified for the primary and canceled the primary. Thereafter, this court upheld the prior court's determination that the intervening defendants were not qualified for the primary and also concluded that the plaintiffs were not qualified. On appeal from the denial of the motion for a new primary election in the present case, the intervening defendants claimed, inter alia, that the trial court had incorrectly determined that it lacked authority to order a new primary election under § 9-329a (b) (3). *Held*:

The trial court correctly concluded that it lacked authority under § 9-329a (b) (3) to order a new primary election under the circumstances of this case.

The remedy afforded by § 9-329a (b) (3) for an error in an election official's ruling, namely, a new primary, contemplates a contested primary election that has been held or will be held, but, when the intervening defendants moved for a new primary in this case, the scheduled primary had been canceled, and neither slate was deemed to have qualified for the primary, thereby leaving no remaining qualified candidates.

Insofar as there were no qualified candidates remaining for the requested primary, the statute (§ 9-421) governing when primaries are not to be held for town committee members dictated that no primary would be held under these circumstances, and any vacancies were to be filled in accordance with the local party rules.

Consequently, the intervening defendants were unable to establish that, but for erroneous decision of Hartford election officials to certify both slates of candidates, the result of the canceled primary might have been different.

There was no merit to the intervening defendants' claim that the trial court's failure to order a new primary violated the fundamental rights of the Democratic voters in the seventh voting district of Hartford, as the candidates, having failed to qualify for the primary, bore responsibility for the lack of a primary rather than the court.

This court declined the intervening defendants' invitation to overrule or narrow the imputed knowledge doctrine, which affords standing to candidates aggrieved by rulings of election officials.

The trial court properly applied the law when it concluded that both slates of candidates had standing pursuant to the imputed knowledge doctrine, and neither cogent reasons nor inescapable logic compelled this court to overrule its precedent on the doctrine or to abandon the doctrine altogether.

Argued June 16—officially July 29, 2025

*Procedural History*

Action for a judgment declaring that certain signatures on a petition sheet circulated by a slate of candidates seeking to appear on the ballot for a certain primary election for the Democratic Town Committee for the seventh district for the city of Hartford were invalid and that the slate was not qualified for nomination due to a failure to file the necessary number of signatures, and for other relief, brought to the Superior Court in the judicial district of Hartford, where the court, *Noble, J.*, granted the motion filed by Kenneth P. Green et al. to intervene as defendants; thereafter, the intervening defendants filed a counterclaim; subsequently, the case was tried to the court, *Noble, J.*; judgment for the plaintiffs on their complaint and in part for the intervening defendants on their counterclaim, and an order directing the named defendant et al. to remove the names of the intervening defendants from the ballot, from which the intervening defendants appealed; thereafter, this court reversed in part the trial court's judgment and remanded the case for further proceedings; subsequently, the court, *Klau, J.*, denied

the motion of the intervening defendants for a new primary election, and the intervening defendants appealed. *Affirmed*.

*Alexander T. Taubes*, for the appellants (intervening defendants).

*John B. Kennelly*, for the appellees (plaintiffs).

*Opinion*

BRIGHT, J. This is the second appeal arising from a primary election dispute between two competing slates of candidates—the Airey slate, which includes the named plaintiff Phyllis Airey,[1] and the Green slate, which includes defendant Kenneth P. Green[2]—who sought to appear on the ballot for the March 5, 2024 primary election for the Democratic Town Committee for the seventh district of the city of Hartford. After the named defendant, the Democratic registrar of voters, Giselle Feliciano, and defendant city clerk, Noel McGregor, certified that both slates of candidates had qualified for the primary election, the Airey slate filed the underlying action pursuant to General Statutes § 9-329a (a),[3] seeking to disqualify the Green slate. See

---

[1] The other plaintiff members of the Airey slate are Ayesha Clarke, Amir Rasheed Johnson, Dyshawn Thames, Ewan Shariff, Michelle Whatley, Donna Thompson-Daniel, Andrew Rodney, Yvette Mosely, Raymond Dolphin, Cambar Edwards, Francisca Nugent, Charmaine Anderson, and John Davis.

[2] The other intervening defendant members of the Green slate are Benita Toussaint, Helen Boutte, Elaine Hatcher, Cynthia Jennings, Kreeshawn Rismay, Katibu Hatcher, Keith Bolling, Jr., Elisha Barrows, Camille Thomas, Ashley Thomas, and Sherma Rismay.

[3] General Statutes § 9-329a (a) provides in relevant part: "Any . . . elector or candidate aggrieved by a ruling of an election official in connection with any primary held pursuant to . . . section . . . 9-425 . . . may bring his complaint to any judge of the Superior Court for appropriate action. . . . If such complaint is made prior to such primary such judge shall proceed expeditiously to render judgment on the complaint and shall cause notice of the hearing to be given to the Secretary of the State and the State Elections Enforcement Commission. If such complaint is made subsequent to such primary it shall be brought, not later than fourteen days after such primary . . . ."

*Airey* v. *Feliciano*, 350 Conn. 162, 164–66, 323 A.3d 1037 (2024). The individual members of the Green slate intervened and filed a counterclaim seeking to disqualify the Airey slate. Id., 165–66. After a hearing, the trial court concluded that only the Airey slate had qualified for the primary and ordered Feliciano and McGregor to remove the Green slate from the ballot. Id., 167. As a result, the March 5 primary was canceled. Id., 168 n.3. The Green slate appealed; id., 165;[4] and we reversed in part the judgment of the trial court. Id., 181–82. We concluded that neither the Green slate nor the Airey slate had qualified for the primary and remanded the case with direction to disqualify the Airey slate "and for other proceedings according to law . . . ." Id., 182.

On remand, the trial court denied the Green slate's motion for a new primary election, reasoning that it lacked the authority to order a new election under § 9-329a (b) (3) because neither slate had qualified for the primary. The Green slate appeals, claiming that (1) the trial court improperly failed to order a new primary election under § 9-329a (b) (3), and (2) the court's failure to order a new primary election violated the fundamental rights of the Democratic voters in Hartford's seventh district. As alternative relief, the Green slate asks this court "to overturn or substantially narrow the overly broad 'imputed knowledge doctrine' that enabled this destructive litigation and threatens to undermine Connecticut democracy." We conclude that the court lacked the authority to order a new primary and that its failure to do so did not violate any voter's fundamental right to vote. We also decline the Green slate's request that we overrule or narrow our imputed knowledge doctrine precedent. We therefore affirm the judgment of the trial court.

---

[4] This court elected to treat the appeal as if it had been filed in the Appellate Court and transferred the appeal to itself. See *Airey* v. *Feliciano*, supra, 350 Conn. 168 n.4.

The record reveals the following relevant facts and procedural history. Following our remand order in *Airey*, the Hartford Democratic Town Committee posted a notice of its intent to fill the vacancies for the city's seventh district by committee appointment during a meeting scheduled for September 16, 2024.[5] Three days before that meeting, the Green slate had moved for a temporary injunction barring the Hartford Democratic Town Committee from filling the vacancies for the seventh district and enjoining Feliciano and McGregor from accepting or recognizing any purported appointments to the seventh district. The Green slate also moved for a new primary pursuant to § 9-329a (b) (3), which authorizes a court to "order a new primary if [it] finds that but for the error in the ruling of the election official . . . or any violation of said sections, the result of such primary might have been different and [the court] is unable to determine the result of such primary." The Green slate argued that the statutory criteria were met in the present case because (1) the error in the rulings of the election official likely affected the result of the primary, given that those rulings "determined which slates appeared on the ballot," and (2) the court was unable to determine the result of the election.

---

[5] During oral argument before this court, counsel for the Airey slate represented that, if no candidates qualify for a primary, the vacancies are filled pursuant to the local rules of the Hartford Democratic Town Committee. The party's local rules, including any amendments thereto, are filed with the secretary of the state and the Hartford town clerk pursuant to General Statutes § 9-374. We take judicial notice of the Hartford Democratic Town Committee's local rules, which are a public record. See, e.g., *Luurtsema* v. *Commissioner of Correction*, 299 Conn. 740, 769 n.28, 12 A.3d 817 (2011) (court may take judicial notice of public records). Article II, § 2, of those rules provides the procedure for filling vacancies on the Hartford Democratic Town Committee when there is no primary election. See Amendment to the Bylaws Governing the Democratic Town Committee of the Town of Hartford, Connecticut (December 17, 2013) art. II, § 2 ("[a]ny vacancy on the Town Committee, *arising from any cause including failure to elect*, may be filled by the Town [C]ommittee by a majority vote of those present and voting at a meeting called for that purpose" (emphasis added)).

On September 16, 2024, the parties agreed that Feliciano and McGregor would "hold any and all filings by the Hartford Democratic Town Committee regarding the membership of the seventh . . . district until there [was] a final decision" in the matter, and the court accepted the parties' agreement. The Airey slate and Feliciano and McGregor subsequently filed briefs opposing the Green slate's motion for a new primary election, and the parties agreed that the court, *Klau, J.*, would decide the matter without a hearing. On April 14, 2025, the court issued a decision denying the Green slate's motion for a new primary. The court reasoned that it lacked the authority to order a new primary under § 9-329a (b) (3) because "no primary election ever occurred, and [this court had] determined that neither slate of candidates qualified to appear on the primary ballot." The court also observed that General Statutes § 9-417 (a)[6] dictated that "[t]he Airey slate—as the party-endorsed slate of candidates for the seventh district—'shall be deemed to have been lawfully elected to such positions . . . .' "

The Green slate filed a motion to reconsider or reargue the court's decision, arguing that (1) the court mistakenly identified the Airey slate as the party-endorsed slate and, therefore, wrongly concluded that § 9-417 (a) dictated the outcome of the present case, and (2) § 9-329a (b) "expressly empower[s] courts to order new

---

[6] General Statutes § 9-417 (a) provides in relevant part: "Except as provided in subsection (b) of this section, if within the time specified in section 9-405, no candidacy for nomination by a political party to a municipal office has been filed . . . by persons other than party-endorsed candidates numbering at least twenty-five per cent of the number of town committee members to be elected by such party either in the municipality or in the political subdivision . . . in conformity with the provisions of sections 9-405 to 9-412, inclusive, and 9-414, no primary shall be held by such party . . . for town committee members . . . and the party-endorsed candidates for election as members of the town committee shall be deemed to have been lawfully elected to such positions at the times specified in section 9-392."

primaries when statutory violations make the election result indeterminable.''

After hearing argument on the motion for reconsideration, the court issued a decision in which it granted reconsideration and vacated its April 14 decision. The court acknowledged that it had mistakenly identified the Airey slate as the party-endorsed slate and agreed with the Green slate that § 9-417 (a) therefore does not control in the present case. The court, however, reached the same conclusion regarding its lack of authority to order a new primary election as it had in its prior decision, reasoning that, ''[p]ursuant to § 9-329a (b), [it could] 'determine the result' of the primary under the present circumstances: no primary shall be held because neither slate qualified for the primary ballot. . . . [T]he current legal status quo is no different than if both slates had simply failed to collect the required number of signatures to qualify for the primary ballot. No primary election would be held under such circumstances.'' This appeal followed.[7]

## I

The Green slate claims that the trial court improperly failed to order a new primary election under § 9-329a (b) (3). We disagree.

We begin our analysis with the applicable standard of review. ''[T]he ultimate determination of whether . . . a new election is called for . . . is a mixed question of fact and law that is subject to plenary review on appeal . . . .'' (Internal quotation marks omitted.) *Keeley* v. *Ayala*, 328 Conn. 393, 404, 179 A.3d 1249 (2018). Whether the court correctly determined that it lacked the authority to order a new primary under § 9-

[7] Although the appeal was filed in this court, we treated the appeal as though it had been filed in the Appellate Court and transferred it to this court. See footnote 4 of this opinion.

329a (b) (3) involves an issue of statutory interpretation, which is also subject to our plenary review. See id.

General Statutes § 1-2z requires that we first consider "the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." Thus, our analysis begins with the plain meaning of the statute, although we remain "mindful that we do not write on a clean slate, but are bound by our previous judicial interpretations of [the statutory] language and the purpose of [the relevant] statute[s]." (Internal quotation marks omitted.) *Stamford* v. *Commission on Human Rights & Opportunities, Office of Public Hearings*, 351 Conn. 298, 306, 330 A.3d 102 (2025).

Pursuant to § 9-329a (a), any candidate who is aggrieved by a ruling of an election official in connection with a primary may file a complaint in the Superior Court either before or after the primary. Section 9-329a (b) requires that the trial court hold a hearing on the complaint and provides that the court "may (1) determine the result of such primary; (2) order a change in the existing primary schedule; or (3) order a new primary if [the court] finds that but for the error in the ruling of the election official . . . the result of [the] primary might have been different and [the court] is unable to determine the result of such primary." Accordingly, the statute authorizes the court to order three distinct remedies if it "finds any error in the ruling of the election official . . . ." General Statutes § 9-329a (b). Each remedy contemplates a contested primary election that either was held; see General Statutes § 9-329a (b) (1) and (3); or will be held. See General Statutes § 9-329a (b) (2).

In the present case, the Airey slate initiated the underlying action before the primary occurred, and the primary was canceled after the trial court determined that the Green slate had failed to qualify for the primary. See General Statutes §§ 9-417 (b)[8] and 9-429.[9] We subsequently held that the Airey slate also had failed to qualify for the primary, which left no qualified candidates for the primary. General Statutes § 9-421 expressly provides that "no primary shall be held by a party for the election of a member of a town committee unless candidacies for such election numbering at least twenty-five per cent of the number of town committee members to be elected by such party . . . are filed in conformity with the provisions of sections 9-400 to 9-414, inclusive, by persons other than party-endorsed candidates." Accordingly, when the Green slate moved for a new primary on remand, no primary had been held, and, pursuant to § 9-421, no primary would be held. In these circumstances, § 9-329a (b) (3) does not authorize the court to order a new primary. Indeed, no primary could be held because neither slate qualified to appear on the primary ballot, which left vacancies

---

[8] General Statutes § 9-417 (b) provides in relevant part: "In the case of any municipality having a population of one hundred thousand or more and in which a party by its rules provides . . . that the town committee members of such party be chosen at direct primaries, if . . . the number of persons who have requested petition forms for candidacies for election as members of such town committee . . . is equal to or less than the number of town committee members to be elected by such party, but at least twenty-five per cent of such number . . . then . . . no primary shall be held by such party for town committee members and such persons shall be deemed to have lawfully been elected to such positions . . . ."

[9] General Statutes § 9-429 provides in relevant part: "If, prior to the opening of the polls at a primary for nomination to an office or for election of town committee members, such a number of candidates have . . . become ineligible . . . as to render the total number of candidates for such office or position no greater than the number to be nominated to such office or elected to such positions, the primary shall not be held, and each of the party-endorsed and other candidates shall be deemed to have been lawfully nominated to such office or elected to such positions."

on the Democratic Town Committee to be filled in accordance with the local party rules. See footnote 5 of this opinion. As a result, the Green slate was unable to establish that, but for the erroneous ruling of the election official—that is, the erroneous certification that both slates of candidates had qualified for the primary—the result of the canceled primary "might have been different . . . ." General Statutes § 9-329a (b) (3). In other words, if the election officials had rejected both slates' petitions, as we concluded in *Airey* that they should have, no primary would have been held, which is exactly what happened.[10] The court therefore correctly concluded that it lacked the statutory authority to order a new primary when no candidates had qualified to appear on the ballot.

The Green slate's arguments to the contrary are unavailing. It argues that ordering a new primary under § 9-329a (b) (3) is authorized, even when the scheduled primary never occurred. According to the Green slate, "[w]hen no primary occurs at all, every conceivable result 'might have been different' than the nonresult of no election." In so arguing, the Green slate seemingly ignores the fact that neither slate had qualified to appear on the primary ballot, and, thus, the candidates—not the election officials—bear responsibility for the canceled primary. The Green slate essentially argues that § 9-329a (b) (3) provides candidates who failed to qualify for the scheduled primary with "the electoral equivalent of a mulligan." (Internal quotation marks omitted.) *Lazar* v. *Ganim*, 334 Conn. 73, 94, 220 A.3d 18 (2019). To the contrary, § 9-329a (b) (3) does not authorize a trial court to order a new primary whenever candidates fail to qualify to appear on the ballot. Instead, § 9-329a

___

[10] During oral argument before this court, counsel for the Green slate conceded that, if the election officials had correctly rejected both slates' petitions, no primary would have been held, and neither slate of candidates would be entitled to a new primary.

(b) (3) authorizes the trial court to order a new primary only when the statutory requirements are met. In the present case, because neither slate of candidates qualified for the original primary, which never occurred, the Green slate was unable to establish that it was entitled to a new primary under the statute.[11]

## II

The Green slate next claims that the trial court's failure to order a new primary violated the fundamental rights of the Democratic voters in Hartford's seventh district. It recounts several provisions of the state and federal constitutions regarding the rights of citizens to vote in elections[12] and argues that the court's decision denying its request for a new primary "does not merely burden or restrict voting rights—it eliminates them entirely." This claim lacks merit.

In *Airey*, we concluded that neither the Green slate nor the Airey slate had qualified to appear on the primary ballot. As we concluded in part I of this opinion, the trial court correctly concluded that it lacked the statutory authority to order a new primary when no slate of candidates had qualified for the primary in the

---

[11] We note that, "[j]ust as [s]tates may require persons to demonstrate a significant modicum of support before allowing them access to the [general election] ballot, lest it become unmanageable . . . they may similarly demand a minimum degree of support for candidate access to a primary ballot." (Citation omitted; internal quotation marks omitted.) *New York State Board of Elections* v. *Lopez Torres*, 552 U.S. 196, 204, 128 S. Ct. 791, 169 L. Ed. 2d 665 (2008); see also *Gottlieb* v. *Lamont*, 465 F. Supp. 3d 41, 55 (D.Conn. 2020) ("[t]he state also has an interest in the orderly and efficient administration of elections . . . an interest clearly served by the petitioning deadlines" (citation omitted)). Because neither slate garnered enough support during the petitioning process to appear on the primary ballot, no primary election was required.

[12] Specifically, the Green slate cites the first amendment to the United States constitution and the state constitutional provisions guaranteeing equal rights; see Conn. Const., art. I, § 1; the right to alter the form of government; see Conn. Const., art. I, § 2; equal protection; see Conn. Const., art. I, § 20; and the right to free suffrage. See Conn. Const., art. VI, § 4.

first place. It follows, therefore, that the candidates—not the trial court—bear responsibility for the failed primary. Consequently, because the alleged restriction on voting rights arises from the failure of the candidates to qualify for the primary, and not from any state action, we reject the Green slate's claim that the trial court's decision violated the fundamental rights of Democratic voters in Hartford's seventh district.

## III

Last, the Green slate claims that the Airey slate lacked standing to initiate the underlying action because the imputed knowledge doctrine, which grants standing to candidates aggrieved by the decisions of election officials, although "established by precedent, violates the plain language of" § 9-329a (a). The Green slate concedes that this claim is unpreserved but contends that it is reviewable because it implicates the trial court's subject matter jurisdiction. We agree that the claim implicates subject matter jurisdiction and is therefore reviewable. See, e.g., *Arciniega* v. *Feliciano*, 329 Conn. 293, 300–301 n.4, 184 A.3d 1202 (2018). We decline the invitation, however, to abandon the imputed knowledge doctrine in election cases.

Both the Airey slate and the Green slate asserted their respective claim and counterclaim pursuant to § 9-329a (a) (1), which authorizes "[a]ny . . . elector or candidate aggrieved by a ruling of an election official" to bring an action in the Superior Court. Neither slate disputed that the other had standing, and the trial court, *Noble, J.*, noted in its memorandum of decision that each slate had standing. Quoting from this court's decision in *Arciniega* v. *Feliciano*, supra, 329 Conn. 303, the trial court recognized that § 9-329a (a) (1) affords standing only when there is " 'a ruling of an election official' " and that " 'an official may render a ruling, even if the official is unaware that a person has committed

a violation of the election laws, if the official would be required to take dispositive action if that violation were known to the official.' " See also *Caruso* v. *Bridgeport*, 285 Conn. 618, 647, 941 A.2d 266 (2008) ("[w]hen an election statute mandates certain procedures, and the election official has failed to apply or to follow those procedures, such conduct implicitly constitutes an incorrect interpretation of the requirements of the statute and, therefore, is a ruling").[13] Under this doctrine, the trial court determined that McGregor's certification that both slates of candidates had obtained sufficient signatures to qualify for the primary election was "a ruling of an election official" by which both slates of candidates were aggrieved.

The trial court properly applied the law, and we conclude that neither cogent reasons nor inescapable logic compels us to overrule *Caruso* or *Arciniega* or to abandon the imputed knowledge doctrine. See, e.g., *State* v. *Lawrence*, 282 Conn. 141, 170, 920 A.2d 236 (2007) ("[T]he doctrine of stare decisis counsels that a court should not overrule its earlier decisions unless the most cogent reasons and inescapable logic require it. . . . Stare decisis is justified because it allows for predictability in the ordering of conduct, it promotes the necessary perception that the law is relatively unchanging, it saves resources and it promotes judicial efficiency." (Internal quotation marks omitted.)).

The judgment is affirmed.

In this opinion the other justices concurred.

———————————

[13] The Green slate neither objected to that conclusion before the trial court nor challenged it on appeal in *Airey*.